COMMONWEALTH *vs.* RICHARD BERNARD
(and a companion case[1]).

Suffolk.    May 10, 1978. — July 20, 1978.

Present: HALE, C.J., GRANT, & BROWN, JJ.

*Identification. Constitutional Law,* Confrontation of witnesses. *Practice, Criminal,* Mistrial, Comment by prosecutor, Agreement between prosecutor and witness, Exceptions, Instructions to jury. *Evidence,* Conversation.

At a criminal trial, there was sufficient evidence to warrant a finding that a witness's in-court identification of the defendant was not so tainted by an earlier photographic identification procedure as to give rise to a substantial likelihood of misidentification. [501–505]

At the trial of two defendants charged with receiving stolen and embezzled property from a courier for a jewelry company, the defendants were not denied their constitutional rights of confrontation or due process of law by the failure of the prosecutor to produce a tape recording of District Court proceedings against the courier in which he was found guilty of larceny of the same property where the prosecutor attempted to secure the recording and was not informed until after the defendants' trial that no such recording existed, and where defense counsel were informed by the prosecutor of the fact that the courier's sentence depended on his cooperation in the case against the defendants and were able thoroughly to explore on cross-examination the possibility that the courier's credibility might be affected by his involvement in the crime and by the inducement to testify. [505–507]

The judge at a criminal trial did not abuse his discretion in denying the defedants' motion for a mistrial based on an allegedly prejudicial comment by the prosecutor in his opening statement and instead giving clear and emphatic instructions to the jury to disregard the comment. [507–508]

The judge at a criminal trial did not abuse his discretion in denying the defendants' motion for a mistrial based on a reference by the

---

[1] Commonwealth *vs.* Lampros Venios.

prosecutor to prior criminal proceedings against the defendants where the reference was vague and inconclusive and where defense counsel had previously opened the subject before the jury. [508]

At the trial of two defendants charged with receiving stolen and embezzled property from a courier for a jewelry company, the judge did not err in permitting a police officer to testify to statements made to him by the courier for the purpose of revealing the circumstances in which the courier had made other statements, which had previously been elicited from the same witness by defense counsel. [508–509]

At a criminal trial, the judge did not abuse his discretion in refusing to strike a question to which defense counsel had not objected. [509]

At the trial of two defendants charged with receiving stolen and embezzled property from a courier for a jewelry company, there was no error in permitting the courier to testify to statements made to him by one of the defendants where the judge gave the jury appropriate limiting instructions. [510]

At a criminal trial, there was no error in the judge's instructions to the jury with respect to assessing the identification testimony and the credibility of a key prosecution witness. [510]

INDICTMENTS found and returned in the Superior Court on April 7, 1977.

The cases were tried before *St.Cyr*, J., a District Court judge sitting under statutory authority.

*Morris M. Goldings* for Lampros Venios.

*Ernest T. Coutlis* for Richard Bernard.

*Timothy P. O'Neill*, Assistant District Attorney (*Brian J. Dobie*, Special Assistant District Attorney, with him) for the Commonwealth.

HALE, C.J. The defendants appeal from their convictions after a jury trial in the Superior Court on indictments charging them with receiving stolen and embezzled property in violation of G. L. c. 266, § 60. Venios assigns as error the judge's allowance of an in-court identification of him by a Commonwealth witness.[2] Both as-

---

[2] Bernard also purports to assign error in the admission of the in-court identification of Venios. However, in the circumstances of this case, he lacks standing vicariously to assert Venios' constitutional rights in regard to that issue. Compare *Brown* v. *United States*, 411 U.S. 223, 230 (1973).

sign as error the judge's permitting the trial to proceed despite the Commonwealth's failure to produce certain evidence requested by the defendants in pretrial discovery, the judge's rulings regarding the admission of certain testimony and other matters in the course of the trial, and the judge's refusal to charge the jury in conformity with instructions proposed by the defendants. No reversible error is disclosed by any of the defendants' contentions. Accordingly, the judgments of the Superior Court will be affirmed.

Most of the case against the defendants was presented through the testimony of one Michael Foxworth. Foxworth was hired in September, 1976, as a courier for Homer's Jewelry Company, Inc. (Homer's), in Boston. As a courier Foxworth delivered gems and jewelry to and from Homer's and other jewelry establishments in Boston. On December 6, 1976, he was given a consignment of gems and jewelry by Homer's and instructed to make several deliveries throughout the city. After visiting one or two establishments, Foxworth absconded with the jewelry in his possession. None of the jewelry was ever recovered. Homer's valued the items lost in the theft at over $11,000.

A warrant was issued for Foxworth's arrest on a charge of larceny. He was arrested on or about January 25, 1977, in Portsmouth, Virginia, by police in that city who had been advised that a warrant had been issued. Two Boston police officers travelled to Portsmouth on January 26, 1977, to accompany Foxworth back to Boston. Foxworth waived extradition and agreed to cooperate with the officers. In subsequent conversations with one of the Boston police officers, a Detective Lundbohm, Foxworth confessed the details of the theft and described the persons who had purchased the stolen jewelry from him. His statements to Detective Lundbohm inculpated the defendants, and they were eventually arrested.

Foxworth pleaded guilty to the charge of larceny in the Municipal Court of the City of Boston. On February 25, 1977, he received a two-year sentence on that charge and was committed to a house of correction. During sentencing the Municipal Court judge informed Foxworth that his sentence could be revised on the condition that he testify in the cases against those persons to whom he had sold the jewelry. In March, 1977, criminal proceedings were brought against Bernard and Venios in the Municipal Court. Foxworth refused to testify at the proceedings. The trial was postponed, and the complaints against Bernard and Venios were ultimately dismissed. Foxworth did testify before the grand jury in April, 1977. The grand jury returned the present indictments against the defendants. After his appearance before the grand jury, Foxworth's sentence was suspended, and he was placed on probation.

At the trial in the Superior Court, Foxworth testified that in November, 1976, he had visited a book store on Boylston Street in Boston. At the book store Foxworth had been introduced by a friend to a man whom the friend called "Richie" and whom Foxworth subsequently identified as the defendant Richard Bernard. In the course of the introduction the friend had informed Bernard of Foxworth's employment as a jewelry courier.

Foxworth met Bernard upon subsequent visits to the book store during the next several weeks. On those occasions Bernard brought up the subject of Foxworth's employment. Bernard told Foxworth that he could make some "big money" by selling the jewelry which he had been hired to deliver. Bernard offered to purchase from Foxworth those gems and jewelry which might be entrusted to him.

Foxworth accepted Bernard's offer on December 6, 1976. After making one or two deliveries, he visited Bernard at the Boylston Street book store and offered to sell him the jewelry in his possession. Bernard inspected the jewelry and agreed to pay Foxworth $1,500 for the lot. He

told Foxworth that as he did not have that amount of cash available, he would have to contact his partner. Foxworth agreed to return with the jewelry in about an hour.

Foxworth returned to the Boylston Street book store with a friend. Bernard led Foxworth and his friend to a nearby book store on Washington Street. The three men entered an office on the second floor above the book store and waited for the arrival of the man with the money. Some time later the "money man," subsequently identified by Foxworth as the defendant Lampros Venios, arrived at the office. Venios inspected the jewelry and made some comments on its value. After inspecting the jewelry, Venios took $1,500 cash from his pocket and paid Foxworth. The parties separated. Foxworth met with Bernard once after the exchange of the jewelry. He did not see Venios again until after the latter's arrest.

1. The first question raised by the assignments of error is whether the judge erred in allowing Foxworth to identify Venios in court as the "money man" involved in the sale of the jewelry.[3] Venios contends that he was denied due process of law by the judge's allowance of the in-court identification because that identification was tainted by an earlier photographic confrontation which was conducted by the police in a manner "so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." *Simmons* v. *United States*, 390 U.S. 377, 384 (1968). We start our analysis of the defendant's claim of constitutional error by recounting the circumstances of Foxworth's pretrial identification of Venios, reciting those facts which were found by the trial judge or which were warranted by the evidence presented at the hearing on Venios's motion to suppress. See *Commonwealth* v. *Gordon, ante* 230, 239 (1978).

[3] After the judge permitted Foxworth to identify Venios in court as the "money man," Venios elicited testimony of Foxworth's pretrial photographic identification of him in an attempt to convince the jury that the circumstances of that identification were so suggestive as to undermine the credibility of Foxworth's subsequent in-court identification.

As part of his understanding with the police, Foxworth agreed to try to identify the men to whom he had sold the stolen jewelry. During his return trip on January 26, 1977, from Portsmouth to Boston, Foxworth described the two men for Detective Lundbohm. He described the "money man" as being approximately five feet nine, dark, well-built, with long hair and a mustache. Upon arriving in Boston Foxworth was taken to a police station where he was shown a series of about two dozen photographs. He selected a photograph of Bernard from that array, identifying him as the man whom he had known as "Richie." Foxworth identified no photograph in that series as that of the "money man." After Foxworth's selection of Bernard's photograph, Detective Lundbohm asked if the name "Venios" meant anything to him. Foxworth responded to the effect that he was unfamiliar with the name.

Foxworth was then transported to police headquarters. While enroute he was driven down Washington and Boylston Streets, and he indicated to Detective Lundbohm the location of the two book stores involved in the jewelry exchange. At police headquarters Foxworth was shown a series of approximately 150 photographs. Although photographs of several persons with the surname "Venios" were included in the display, a photograph of the defendant Lampros Venios was not among them. Foxworth identified no photograph as that of the "money man." He did, however, select photographs which he claimed bore a resemblance to the "money man."

Detective Lundbohm first obtained a photograph of Venios on the next morning. He went with that photograph to the Municipal Court, where Foxworth was being held awaiting arraignment. Lundbohm had Foxworth brought out from the court lockup, and he showed the single photograph to Foxworth. Foxworth immediately identified the photograph of Venios as that of the "money man."

Commonwealth *v.* Bernard.

We observe at the outset that the manner of Foxworth's photographic identification of Venios in this case is clearly the type of identification procedure looked upon with disfavor by the courts. See *Simmons* v. *United States*, 390 U.S. at 383; *Commonwealth* v. *Nolin*, 373 Mass. 45, 51 (1977). Nevertheless, an error in police procedure does not inevitably render an identification incompetent. *Manson* v. *Brathwaite*, 432 U.S. 98, 112–113 (1977). A witness may still be constitutionally permitted to testify to his identification of a defendant so long as the court finds that in the totality of the circumstances the identification will be reliable. *Neil* v. *Biggers*, 409 U.S. 188, 199 (1972). *Manson* v. *Brathwaite*, 432 U.S. at 114. *Commonwealth* v. *Gordon, supra* at 235-236.

In his decision denying the defendant's motion to suppress the judge found that "Michael Foxworth's original observations of defendant Lampros Venios were made under conditions so favorable to his identification as to cure any possible suggestion that may have been made either orally or by the presentation of the single photo by Detective Lundbohm."[4] We view that statement as a finding by the judge that under all the circumstances Foxworth's in-court identification of Venios would be reliable, and we hold that this finding of reliability is supported by the judge's subsidiary findings and warranted by the evidence.

In *Manson v. Brathwaite*, the United States Supreme Court held that the reliability of a witness' identification of a defendant should be assessed by weighing certain conditions which indicate the quality of that identification against the corrupting effect of a suggestive, pretrial photograhic confrontation. The conditions to be considered include the opportunity of the witness to observe the criminal at the time of the crime, the witness' degree of

[4] The judge also found that the in-court identification by Foxworth was based solely on his memory of his observation of Venios at their first meeting.

attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the photographic identification, and the time between the crime and that identification. *Manson* v. *Brathwaite*, 432 U.S. at 114.

In this case the judge's findings indicate that although Foxworth met with the "money man" on only one occasion, the circumstances of that meeting were such as to provide Foxworth with a substantial opportunity to observe him. The meeting took place in a well lighted office.[5] Foxworth and the "money man" were about five feet apart. Foxworth had a clear and unobstructed view of the "money man" for a period of about five minutes. We also note that this meeting, in which Foxworth sold stolen jewelry to the "money man" for a substantial sum of money, was the type of encounter wherein Foxworth was likely to have paid considerable attention to his counterpart, thereby affixing a lasting impression of his appearance in his memory. Cf. *Commonwealth* v. *Frank*, 357 Mass. 250, 254 (1970).

The judge also found that when Foxworth was shown the single photograph of Venios, he immediately and unequivocally identified it as that of the "money man." We consider it significant that Foxworth identified that photograph upon first viewing it after having been previously shown a display of over 150 other photographs. See *Cooper* v. *Picard*, 428 F.2d 1351, 1352 (1st Cir. 1970); *Nassar* v. *Vinzant*, 519 F.2d 798, 801 (1st Cir. 1975). Venios has not contended that Foxworth ever identified any other person as being the "money man." Nor has he alleged that Foxworth's initial, verbal description of the "money man" to Detective Lundbohm varied substantially from Venios' own appearance.

[5] Although it plays no part in our analysis, we note that the reliability of Foxworth's identification of Venios is hardly undermined by the fact that Venios was ultimately arrested in the office which had previously been pointed out by Foxworth as the location of the sale of the jewelry. See *Manson* v. *Brathwaite*, 432 U.S. at 116.

All of the above factors support the judge's finding that Foxworth's in-court identification of Venios would be reliable. We consider that this finding of reliability is not undermined by certain other circumstances of this case which have been noted by the defendant. The fact that the name Venios was first suggested to Foxworth by Detective Lundbohm is not significant. That suggestion was not linked to any particular photograph, and Foxworth did not know the name of the "money man." See *Commonwealth* v. *Hogg*, 4 Mass. App. Ct. 225, 228 (1976); *Commonwealth* v. *Simon, post* 894 (1978). The lapse of somewhat less than two months between Foxworth's meeting with the "money man" and his identification of Venios' photograph is certainly a factor to be considered in assessing the reliability of that identification. However, under the circumstances of this case that factor does not, in itself, compel the conclusion that the identification was unreliable. Compare *Neil* v. *Biggers*, 409 U.S. at 201. Finally, while at one point between his initial identification of Venios' photograph and his identification of Venios at trial Foxworth expressed some doubt regarding the accuracy of that initial identification, this does not necessarily indicate that his identification was unreliable. On the evidence it was open for the judge to find, as we think he impliedly did, that Foxworth's temporary retraction was an expression of his determination at that time not to testify against the defendants, rather than an expression of any real uncertainty on Foxworth's part as to whether Venios was the "money man." We conclude that as the circumstances of this case do not indicate "a very substantial likelihood of misidentification," the judge properly allowed Foxworth to identify Venios in court, leaving the determination of the accuracy of that identification to the jury.

2. In another assignment of error the defendants claim that they were prejudiced by the Commonwealth's failure to provide them with a tape recording of the proceedings in the Municipal Court on February 25, 1977, in which

Foxworth was found guilty of larceny and sentenced to a house of correction. Pursuant to Rule 15(A) of the Rules of the Municipal Court of the City of Boston Sitting for Criminal Business (effective July 1, 1975) "All courtroom proceedings in criminal cases conducted by a judge [including those of the type brought against Foxworth] shall be recorded electronically, subject to the availability and functioning of appropriate recording devices." The defendants made a timely motion in this case that the Commonwealth provide them with a copy of the recording which they assumed had been made of the Foxworth proceedings. Although the defendants' motion had been allowed by a Superior Court judge on May 2, 1977, the Commonwealth did not produce the requested recording either prior to or during the defendants' trial, which commenced on August 1, 1977.

The defendants claim that the judge erred in proceeding to trial and in refusing to impose sanctions against the prosecutor because of his failure to produce the requested recording. They contend that the unavailability of that recording resulted in an abridgement of their right to confrontation because the recording may have disclosed bias, prejudice or prior inconsistent statements of a key Commonwealth witness. They argue that reversal of their convictions is required because their due process rights were violated when the prosecutor failed to provide them with requested evidence, irrespective of the good or bad faith involved in that default. See *Brady* v. *Maryland*, 373 U.S. 83, 87 (1963). We do not agree.

The record in this case reveals that the recording requested by the defendants was not actively suppressed by the Commonwealth. The prosecutor apparently made requests on behalf of the defendants to the Municipal Court for a copy of the recording. Neither the prosecutor nor defense counsel was informed until after the defendants' trial of the fact that there was no recording of the Foxworth proceedings due to a malfunctioning of the recording equipment in the Municipal Court.

Nor is this a case where the defendants were kept unaware of the inducements which had been offered to a prosecution witness in return for his testimony. Contrast *Napue* v. *Illinois*, 360 U.S. 264 (1959); *Giglio* v. *United States*, 405 U.S. 150 (1972). In lieu of the recording, the prosecutor supplied the defendants prior to trial with a memorandum, written by the assistant district attorney who had been in charge of the Foxworth case, which detailed the circumstances of Foxworth's sentencing and disclosed the fact that service of that sentence depended on Foxworth's degree of cooperation with the Commonwealth. Counsel for both defendants cross-examined Foxworth closely about the nature of his agreement with the Commonwealth. Despite the potential limitation of their cross-examination resulting from the unavailability of the requested recording, defense counsel were able thoroughly to explore the possibility that Foxworth's credibility might be affected by his involvement in the crime and by the inducement to testify. See *Commonwealth* v. *Michel*, 367 Mass. 454, 461 (1975). Under the circumstances the mere possibility that a recording, had one been made, might have further assisted defense counsel in their cross-examination of Foxworth does not constitutionally compel the reversal of the defendants' convictions. *United States* v. *Agurs*, 427 U.S. 97, 109–110 (1976).

3. In their next assignments of error the defendants contend that the judge made several erroneous rulings on motions and objections which were raised at trial. We address those contentions in order.

The defendants argue first that the judge erred in denying their motion for a mistrial based on an allegedly prejudicial comment made by the prosecutor in his opening statement. In his opening the prosecutor described the location of the Washington Street book store involved in this case by mentioning its proximity to a lounge in the "Combat Zone" of Boston. The defendants claim that this reference served to prejudice them in the eyes of the jury

because the named lounge had recently been involved in a number of well publicized court proceedings. Although the judge denied the defendants' motion for a mistrial, he later gave clear and emphatic instructions in his general charge that the jury should disregard the prosecutor's reference to the lounge as totally irrelevant to the determination of guilt or innocence in the present case. We concur with the judge's decision to cure by strong instruction any potential prejudice which was caused by the prosecutor's solitary statement. The judge's denial of the motion was not an abuse of discretion. See *Commonwealth* v. *Barnett*, 371 Mass. 87, 96 (1976), cert. denied 429 U.S. 1049 (1977); *Commonwealth* v. *Fazio*, 375 Mass. 451, 461 (1978).

The defendants contend next that the judge erred in denying their motion for a mistrial based on a reference by the prosecutor to prior criminal proceedings against the defendants. While questioning Detective Lundbohm, the prosecutor asked if a hearing or trial had been set up for the defendants in the Municipal Court. The defendants objected to the question before Detective Lundbohm had an opportunity to answer, and they then moved for a mistrial. The judge curtailed the prosecutor's line of questioning subsequent to the defendants' objection. The judge properly denied the defendants' motion. The reference to the Municipal Court proceedings was vague and inconclusive and as the question was not answered, it had no testimonial effect. In any event, defense counsel had previously opened the subject before the jury when they questioned Foxworth about his refusal to testify against the defendants in the earlier proceedings. See *Commonwealth* v. *Sloane*, 361 Mass. 872 (1972).

The defendants also claim that the judge improperly allowed hearsay evidence to be admitted when he permitted Detective Lundbohm to testify to statements which Foxworth had allegedly made to him in a conversation which had occurred in February at a house of correction during Foxworth's incarceration on the larceny charge.

In response to the prosecutor's question Lundbohm testified that Foxworth had stated that he was scared because he thought that someone was out to get him. Defense counsel had earlier elicited on direct examination Lundbohm's testimony that during the same conversation Foxworth had expressed both doubt about his identification of Venios and a desire not to testify against the defendants. As the defendants had originally introduced testimony of statements made by Foxworth for the purpose of indicating his feelings about the case at the time of the conversation, the Commonwealth was entitled to introduce testimony of other statements made by Foxworth during that same conversation for the purpose of revealing the circumstances under which his first statements had been made. See *Commonwealth* v. *Taylor*, 327 Mass. 641, 648–649 (1951), and cases cited. Compare *Commonwealth* v. *Nolet, post* 881 (1978).

Venios contends next that the judge incorrectly admitted hearsay testimony by Detective Lundbohm that Foxworth had previously pointed out the Washington Street book store to him and had stated that it was the location at which the jewelry had been exchanged. Detective Lundbohm testified without objection that Foxworth had indicated to him that the transaction had occurred at the book store on Washington Street. No objection was raised by defense counsel until after the prosecutor's subsequent query whether Foxworth had indicated at that time on which floor of the book store the transaction had occurred. The judge allowed the question because of its continuity with the previous unchallenged testimony. The defendant then moved to strike the question to which he had not objected, and he excepted to the denial of that motion. That denial was within the discretion of the judge. *Commonwealth* v. *Valentino*, 257 Mass. 419, 420 (1926).

Venios also objected to the judge's permitting Foxworth to testify to statements made to him by Bernard in the course of their meetings both before and after the sale

of the jewelry. Venios objected to the introduction of the statements on the ground that they were not admissible against him as he had not been present at the meetings. We need not reach the question whether Bernard's statements to Foxworth could properly have been introduced against Venios on a theory that he and Bernard had been involved in a joint enterprise. See *Commonwealth* v. *Flynn*, 362 Mass. 455, 477 (1972). The judge instructed the jury, both in the course of Foxworth's testimony and in his general charge, that testimony of statements made during a conversation at which only one defendant was present could be considered by the jury solely against that defendant, and that no inference could be drawn therefrom by the jury against the other, absent defendant. The content of Bernard's statements to Foxworth did not directly incriminate Venios. The judge did not err in admitting those statements with appropriate limiting instructions. *Commonwealth* v. *Devlin*, 365 Mass. 149, 161 (1974).

4. We find no merit in the defendants' final contentions relating to the judge's charge to the jury. The judge's clearly worded instructions were adequate to guide the jury in their function of assessing the accuracy and reliability of Foxworth's identifications of the defendants. See *Commonwealth* v. *Nassar*, 354 Mass. 249, 264–265 (1968), cert. denied, 393 U.S. 1039 (1969); *Commonwealth* v. *Jones*, 375 Mass. 349, 359 (1978). The judge also properly directed the jury to consider Foxworth's involvement in the crime and his inducement to testify in order to avoid incarceration in gauging the weight and credibility of his testimony inculpating the defendants. He was under no obligation to charge the jury in the particular language of the defendants' requests. *Commonwealth* v. *Martin*, 357 Mass. 190, 193–194 (1970).

*Judgments affirmed.*