COMMONWEALTH vs. JAMES M. SAMPSON.

Middlesex.     April 5, 1979. — May 7, 1979.

Present: BROWN, GREANEY, & KASS, JJ.

*Practice, Criminal,* Directed verdict. *Identification. Evidence,* Relevancy.

At the trial of a defendant charged with armed robbery of a pharmacy, evidence that the defendant was present in the store while the robbery was in progress, that he exited with another participant in the robbery, and that he fled when approached by police officers outside the pharmacy was sufficient to warrant the denial of his motion for a directed verdict. [517-518]

At the trial of a defendant charged with armed robbery of a pharmacy, the judge did not err in permitting two police officers to make in-court identifications of the defendant some two years after the incident where there was evidence that as the defendant left the pharmacy both officers had his face in full view in clear daylight for five to ten seconds and where their identifications of the defendant from photographs on file at the police station shortly after the robbery were devoid of even minimal suggestiveness. [518-520]

The judge at a robbery trial did not abuse his discretion in excluding from evidence a receipt, dated some two months after the robbery and signed by the defendant, for a deposit with an out-of-State car rental agency which was offered to show that the defendant was not in the Commonwealth at the time of the robbery. [521-522]

INDICTMENT found and returned in the Superior Court on December 10, 1975.

The case was tried before *Alberti,* J.

*Thomas A. Wirtanen* for the defendant.

*James W. Sahakian,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. The defendant appeals (G. L. c. 278, §§ 33A-33G) from his conviction of armed robbery (G. L. c. 265, § 17) by a Middlesex County jury. He assigns error

in three areas: (1) the denial of his motion for a directed verdict; (2) his identification as a participant in the crime by two police officers; and (3) certain evidentiary rulings made at the trial. We find no error and affirm the conviction.

We summarize the facts that could have been found by the jury at the close of the Commonwealth's case. About 2:00 P.M. on September 24, 1975, the victim, Salvatore Arena, was at work in his pharmacy in Watertown. Two young customers[1] were in the store waiting for a prescription to be filled. Arena became aware of two more people entering the store, and shortly after they entered he was accosted by a man pointing a .380 semi-automatic Beretta pistol at his chest. The second man in the store initially ordered the two young customers to lie face down on the floor and then made them get up and lie down behind a counter. The youths heard between three and six additional people enter the store. They also heard general conversation between the robbers who were demanding drugs and money from Arena. One of the men asked another to get some bags. Arena opened the door to the narcotics cabinet and was made to stand in a corner with his face to the wall. Drugs were taken from the cabinet, and $100.60 was removed from the cash register.

While the robbery was in progress two plainclothes Watertown detectives, Lieutenant Edward J. Vaughn and Captain Robert M. Kelly, arrived in the area of the pharmacy to investigate an unrelated crime. The officers parked their unmarked cruiser at an angle about forty to sixty feet from Arena's store and observed activity through the window of the pharmacy that aroused their suspicions. They left their cruiser and approached the drugstore. The officers were observed by the robbers, and one of the males in the store indicated to the others that they were being watched. The young boys were told by

[1] Louis Moscato and James Smith, both age sixteen at the time of the incident.

one of the males that the first one out of the store would be shot. Shortly after this warning, the customers heard a couple of men leave, and then two or three more men left the premises.

When Lieutenant Vaughn was approximately eighteen to twenty feet from the entrance of the store he saw two men leave the pharmacy. He observed their faces for five to ten seconds and "immediately" recognized one of the men (later identified as Sampson) as someone he "had seen before" and "had known." Captain Kelly observed the full faces of the two men for a "few seconds" from a distance of twenty feet.

Lieutenant Vaughn ordered the men to stop, but both ran. One of the males was apprehended, identified as Victor Hunt, and searched. On Hunt were found $100.60 (the exact amount taken in the robbery), a mask, and Kung Fu sticks.[2] While Vaughn was engaged with Hunt, Captain Kelly at approximately the same time observed two more men exit the store and walk rapidly away from the pharmacy in the opposite direction from Hunt and his companion. One of those men was later identified by Arena as Vincent Testa, the person who had held the pistol on Arena in the store.[3]

About one hour later Lieutenant Vaughn looked at three mug-shot photographs at the Watertown police station and picked out a photograph of the defendant Sampson as one of the persons he had seen leaving the pharmacy with Hunt. Vaughn displayed the photographs to Kelly, who also picked out Sampson as one of the men he had seen leaving the drug store a few hours earlier.[4]

---

[2] The record discloses that Hunt subsequently entered a guilty plea on an indictment charging him with armed robbery.

[3] Testa was tried for the armed robbery jointly with the defendant Sampson, and his conviction was affirmed by this court in *Commonwealth* v. *Testa, ante* 292 (1979).

[4] The record does not support the defendant's contention that both officers viewed only a single photograph of Sampson together. Even if they did view one photograph at the same time, this would not be

1. *Motion for Directed Verdict.*

The defendant first assigns as error the judge's failure to allow his motion for a directed verdict.[5] His argument in this regard is that, since no one could identify him as being inside the pharmacy when the robbery occurred, it could not be shown that he actually participated in the armed robbery with the requisite criminal intent. He says that the Commonwealth's proof amounted at best to proof that he may have been present at the scene.

We examine these assertions under the familiar standards pertaining to the assessment of a motion for a directed verdict in a criminal case, namely, that the case is to be submitted to the jury when the evidence read in its aspect most favorable to the Commonwealth is such that the jury "might properly draw inferences, not too remote in the ordinary course of events, or forbidden by any rule of law, and conclude upon all the established circumstances and warranted inferences that the guilt of the defendant was proved beyond a reasonable doubt." *Commonwealth* v. *Vellucci*, 284 Mass. 443, 445 (1933). *Commonwealth* v. *Mangula*, 2 Mass. App. Ct. 785, 786 (1975). We also examine the argument in light of the theory underlying culpability for someone who participates in a joint criminal venture that "one who aids, commands, counsels, or encourages commission of a crime while sharing with the principal the mental state required for the crime is guilty as a principal," *Commonwealth* v. *Soares*, 377 Mass. 461, 470 (1979); *Commonwealth* v.

automatic grounds for exclusion of the identifications. See *Commonwealth* v. *Cofield*, 1 Mass. App. Ct. 660, 667 (1974). The basic inquiry (discussed hereafter) would be as to the reliability of the identifications.

[5] The motion was made at the close of the Commonwealth's case and again at the close of all the evidence. We consider the motion against the state of the evidence when the Commonwealth closed its case in chief, *Commonwealth* v. *Kelley*, 370 Mass. 147, 149-150 n.1 (1976); *Commonwealth* v. *Blow*, 370 Mass. 401, 407 n.4 (1976); *Commonwealth* v. *Campbell*, 375 Mass. 308, 311-313 (1978).

*Blow*, 370 Mass. 401, 407-408 (1976), and that the jury may infer the requisite mental state from the defendant's knowledge of the circumstances and subsequent participation in the offense. See *Commonwealth* v. *Ferguson*, 365 Mass. 1 (1974). At the conclusion of the Commonwealth's case the jury could properly have found that at least four males were in the drugstore, and that Testa had held Arena at bay with a pistol while money was removed from the cash register and narcotics were taken from the cabinet. A second person kept the two young customers in the store under control. The conversations involving the participants' asking for money, narcotics, and bags to hold the drugs amply illustrated that all were engaged in the robbery. The exit from the store by two groups of two, splitting in opposite directions after a warning to the boys that the "first one out would be shot," indicates a quick denouement of the plot after its fortuitous discovery by the police, and warranted an inference that the robbers went in opposite directions to make their apprehension more difficult. Sampson's flight when approached by the officers, in light of the other circumstances, also tended to indicate his culpability. *Commonwealth* v. *Smith*, 1 Mass. App. Ct. 545, 547 (1973). *Commonwealth* v. *Gilday*, 367 Mass. 474, 496 (1975). There was ample evidence to warrant a finding that Sampson entered the store with the others, participated in the robbery directly, as a lookout, as a guard over the customers, or as an assistant in the escape, and shared with Testa and the others the intent to see the robbery accomplished. It would have required stout credulity to conclude that the jury could only have found Sampson serenely present in the store while the chaotic events of the robbery swirled around him.

2. *Identifications by the Police Officers.*

The defendant next argues that it was error to permit the police officers to make in-court identifications of the defendant at the trial some two years after the incident. He premises this argument on an assertion that the un-

derlying identifications made at the police station by the officers and used as the basis of their in-court identifications were inherently unreliable because based on an inadequate opportunity to observe the culprits exiting the store at the time of the robbery, and founded in part on photographs which he styles "suggestive." These contentions are without merit.

The out of court identifications by both officers were supported in all respects by the indicia of reliability used to determine the admissibility of identification testimony as set forth in *Manson* v. *Brathwaite*, 432 U.S. 98 (1977).[6] See *Commonwealth* v. *Gordon*, 6 Mass. App. Ct. 230 (1978). The lieutenant held Sampson's face in full view, in clear light,[7] for five to ten seconds. He sensed an immediate flash of recognition that he knew the man and had seen him before. The officer viewed the photographs[8] approximately one hour after the crime and was certain upon seeing Sampson's photo that the defendant was the same person he had seen leaving the store and fleeing from the scene in the company of Hunt.

Captain Kelly had an equally clear line of vision of Sampson exiting the store. With three armed robbers still at large, one of whom possessed a .380 Beretta pistol, it was more than proper for Vaughn to show his superior officer the three photographs he had in his possession. Kelly, a police officer of seventeen years' experience, was equally quick in selecting Sampson's photo, without any prompting from Vaughn, as that of one of the culprits,

---

[6] These factors are: "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation." *Manson* v. *Brathwaite, supra* at 114.

[7] There was testimony that the day was cloudy but clear.

[8] The photograph of Sampson included in the group was of the mugshot variety and was not offered at the trial because it revealed that Sampson had a prior criminal record and it could not be sanitized to cleanse this impermissible inference.

and Kelly made his identification of Sampson's photo in positive and unequivocal terms, based on adequate observations at the scene of the crime.[9]

The defendant's assertion that the officers were under some obligation to return to the station and investigate the robbery without viewing photographs on file there, and without being "suggestive" between themselves, is without merit. The identifications were reliable and accurate and based on circumstances devoid of even minimal suggestiveness.[10] See and contrast *Commonwealth* v. *Botelho*, 369 Mass. 860 (1976).

3. *Other Rulings of the Judge.*

The defendant's final exceptions concern rulings made by the judge with reference to the cross-examination of the police officers, and the exclusion of a document offered as supportive of the defendant's presence elsewhere on the date of the crime.

(a) *Cross-examination of the officers.* In the course of the cross-examination of the police officers defense counsel made reference to a "police report,"[11] and attempted to elicit from the officers that the report did not contain a notation concerning their identification of Sampson. The report was apparently prepared by a third officer, Robert Campasano, and consisted of a compilation of in-

---

[9] Captain Kelly also gave a description of Sampson's height, weight and clothing at the trial, based on his unchallenged recollection of the scene.

[10] Additionally, Sampson (and Testa) received the benefit of a very favorable instruction from the judge on the issue of identification when he instructed the jury to scrutinize all of the circumstances "affecting the witness' opportunity to observe the person committing the offense." The judge outlined with particularity the various considerations that the jury should evaluate in assessing the identification testimony and, in the main, informed the jury of most of the factors discussed in *Manson* v. *Brathwaite.*

[11] There was some confusion as to whether the document was a police report in the usual sense or a report prepared for the district attorney in connection with the probable cause hearing on the case held in a District Court.

formation received from several officers who had investigated the robbery. Neither Officer Vaughn or Kelly had prepared the report, and it was not admissible as containing a prior inconsistent statement by either officer since it was not shown to have reflected any statement on the part of either. *Commonwealth* v. *Happnie*, 3 Mass. App. Ct. 193, 199 (1975). No effort was made to qualify any portions of the report as an entry made in the regular course of business (G. L. c. 233, § 78). In any event, the point sought to be made with regard to the report was ultimately achieved when defense counsel extracted from Lieutenant Vaughn a concession that his identification of Sampson was not contained in the document. See *Commonwealth* v. *O'Neil*, 3 Mass. App. Ct. 768 (1975). Having obtained that concession from Vaughn, defense counsel later dropped the same line of inquiry with Captain Kelly without saving an exception to the judge's rulings on his questioning of Kelly. This leaves nothing further to review on the point. *Commonwealth* v. *Lovell*, 6 Mass. App. Ct. 172, 178 (1978).

(b) *Exclusion of the document.* The defendant offered evidence through his friend Deborah Aunchman that he was in Phoenix with her from a time before the robbery until some time in mid-November, 1975. In the course of direct examination of Aunchman defense counsel offered a receipt dated November 17, 1975, for a deposit purportedly made by Aunchman with a Phoenix rental car agency. The document was signed on the back by the defendant and was offered to prove that the defendant was in Phoenix in November. The judge excluded the receipt as hearsay. It is not necessary to canvas the myriad exceptions to the hearsay rule[12] to attempt to find a pigeonhole

---

[12] The cases cited by the defendant as supporting admission of the receipt as an exception to the hearsay rule are not on point since the evidence offered in each was not offered for its truth but rather as demonstrative or real evidence that tended to connect the accused with the crime. See *Commonwealth* v. *Parrotta*, 316 Mass. 307, 313 (1944); *Commonwealth* v. *O'Toole*, 326 Mass. 35, 39 (1950); *Common-*

that would make the receipt admissible (defense counsel offered no precise exception) since the short answer is that the judge correctly exercised his discretion to exclude the receipt. The date of the document was too remote and therefore irrelevant as proof that the defendant was not in Watertown on September 24, 1975 (*Commonwealth* v. *Valliere*, 366 Mass. 479, 493 [1974]), and additionally it was merely cumulative of extensive testimony already given by the witness on the same point. *Commonwealth* v. *Lee*, 324 Mass. 714, 719 (1949). *Commonwealth* v. *Ellison*, 5 Mass. App. Ct. 862, 863 (1977).

*Judgment affirmed.*

wealth v. *Grant*, 352 Mass. 434, 437-438 (1967); *Commonwealth* v. *Soroko*, 353 Mass. 254, 260-261 (1967).