COMMONWEALTH *vs.* DARRYL E. REDDING.

Suffolk.  September 9, 1980. — December 16, 1980.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Practice, Criminal*, Disclosure of evidence.  *Identification.*

At a criminal trial, belated disclosure of a statement made to the police by
a codefendant neither prejudiced the defendant nor created a sub-
stantial risk of a miscarriage of justice.  [155-157]
There was no merit to a defendant's contention that a witness's photo-
graphic identification of him was made under unnecessarily suggestive
conditions.  [157-158]

INDICTMENTS found and returned in the Superior Court
Department on October 4, 1978.

The cases were tried before *Ronan,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Willie J. Davis* for the defendant.

*Leonard J. Henson,* Assistant District Attorney, for the
Commonwealth.

ABRAMS, J.  The defendant, a codefendant with Jamie
Cundriff, *ante* 137 (1980), was found guilty by a jury on
seven indictments charging armed robbery while masked
(G. L. c. 265, § 17), and one indictment of armed assault
with intent to rob (G. L. c. 265, § 18).  He was sentenced to
serve concurrent terms of from fifteen to twenty-five years
at the Massachusetts Correctional Institution at Walpole.
We transferred the case to this court on our own motion.

Redding asserts that he was denied a fair trial due to (1)
the Commonwealth's late disclosure of a statement made by
a codefendant which he claims was exculpatory as to him;
and (2) the admission in evidence of an identification made

under impermissibly suggestive circumstances, which then tainted the witness's in-court identification of him. We affirm the convictions.

The main facts of this case are set out in *Commonwealth v. Cundriff, supra*, the appeal of one of Redding's codefendants. The additional facts relevant to Redding's appeal are as follows. At approximately 2:30 P.M. on the day of the robbery, two Boston police officers saw four males running in the vicinity of the Casa de Hombre hairdressing salon. One officer identified Redding, whom he knew previously, as one of the four. This officer testified that because he knew Redding and his companion, the police decided to follow the other two men (the Cundriff brothers), whose identities the officers did not know at the time. Redding was identified as one of the persons involved in the robbery by one of the patrons in the Casa de Hombre.

At the outset we note that neither issue raised by Redding on appeal was based on an objection or exception properly taken at trial.[1] Since the defendant has no right of appellate review in the absence of an objection, *Commonwealth v. Williams,* 379 Mass. 600, 604 (1980); *Commonwealth v. Underwood,* 358 Mass. 506, 509 (1970), we review his claims only to determine whether there has been a miscarriage of justice. *Commonwealth v. Freeman,* 352 Mass. 556, 563-564 (1967).

*Late disclosure of exculpatory evidence.* Redding argues that the belated disclosure of Jamie Cundriff's statement represents suppression of material evidence favorable to him.[2] He alleges that this denied him the right to a fair trial guaranteed by the due process clause of the Fourteenth Amendment to the Constitution of the United States. See

---

[1] On further redirect examination, Redding excepted to a question put to a witness as to whether there was any doubt in his (the witness') mind that Redding was the man who raised the mask above his nose. At that point, the witness had identified Redding as one of the robbers, without objection, on at least three prior occasions.

[2] A full discussion of these facts is set out in *Commonwealth v. Cundriff, supra*.

generally *United States* v. *Agurs,* 427 U.S. 97 (1976); *Brady* v. *Maryland,* 373 U.S. 83, 87 (1963); *Commonwealth* v. *Wilson,* 381 Mass. 90, 107 (1980); *Commonwealth* v. *St. Germain,* 381 Mass. 256, 261-265 (1980); *Commonwealth* v. *Ellison,* 376 Mass. 1, 21 (1978). The question raised is "whether, given a timely disclosure, the defense would have been able to prepare and present its case in such a manner as to create a reasonable doubt that would not otherwise have existed." *Commonwealth* v. *Wilson, supra* at 114.[3] The statement creates no such reasonable doubt. The evidence indicates that one of the officers saw Gregory Wilson (a codefendant) and Redding running with the Cundriff brothers in the vicinity of the Casa de Hombre not long after the robbery. One of the patrons at the Casa de Hombre identified Redding as one of the perpetrators of the various crimes. Thus there is no basis to conclude that the late disclosure of this statement either prejudiced Redding or created a substantial risk of a miscarriage of justice.

The defendant also argues that the delayed disclosure of the statement prevented him from considering other trial strategies. The short answer to this argument is that beyond advancing it, he offers nothing but conjecture on the effect of the delayed disclosure.[4] Redding did not seek any continuance from the judge to reconsider his trial tactics. In sum, there is no basis in this record which permits a conclusion "that the delayed receipt of the evidence 'affected the outcome of the trial,'" *Commonwealth* v. *Wilson, supra* at 115, quoting from *United States* v. *Agurs,* 427 U.S. 97, 104 (1976), or created a substantial risk of a miscarriage of justice.

---

[3] The record does not disclose that Redding made a specific request for statements.

[4] Redding asserts that he might have appealed the judge's pretrial ruling not to exclude evidence of his criminal convictions. However, he does not argue that issue in this appeal, and we deem it waived. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). See *Commonwealth* v. *Cundriff, supra* at 150 n.22.

We again stress that the prosecutor should make every effort to disclose to the defendant exculpatory evidence which is available to the prosecution. "The police are also part of the prosecution, and the taint on the trial is no less if they, rather than the State's Attorney, were guilty of the nondisclosure." *Commonwealth* v. *St. Germain,* 381 Mass. 256, 261 n.8 (1980), quoting from *Barbee* v. *Warden, Md. Penitentiary,* 331 F.2d 842, 846 (4th Cir. 1964).

*The photographic identification.* Approximately three hours after the crime, one of the customers who had been inside the Casa de Hombre identified a picture of Darryl Redding as that of one of the robbers. He chose it from a group of twelve to fifteen photographs presented to him at the police station. Redding's name was written on the back of the picture; however, a policeman present at the identification testified that the name was written in a place where a person viewing the photograph from the front would not see it.

The witness subsequently identified Redding at the trial. He testified that while the robbery was in progress and he was lying on the floor, he "kept turning" his head in order to observe the goings-on. The witness stated that at one point he saw the robber he identified as Redding lift his mask partially off his face, allowing him to see Redding's nose, and to "just barely" see his eyes.

The defendant argues that the photographic identification was improperly suggestive, and therefore neither it nor the subsequent in-court identification of the defendant by the witness should have been admitted in evidence.

According to Redding, several factors combined to render the identification impermissibly suggestive, including the short time the witness had to view the robber's unmasked face, the witness' inability to see the robber's entire face, the possibility that the witness overheard policemen at the station house using Redding's name before he identified Redding's picture, the presence of Redding's name on the back of the identification photograph, and the witness' admission

that he felt a desire for "revenge" after the robbery.[5]  Redding argues that the exclusion of this identification leaves insufficient evidence to support a verdict of guilty beyond a reasonable doubt, and therefore directed verdicts of not guilty should have been granted.

The witness testified that during the robbery he was close to one of the four men, was looking directly at him, and was consciously trying to observe what was happening.  He said that when Redding raised the mask he particularly noticed the size and shape of Redding's lips, and the presence of acne on the part of Redding's face that he could see.  Those circumstances were sufficient to fix the robber's face in the mind of the witness.  *Commonwealth* v. *Frank*, 357 Mass. 250, 254 (1970).  We conclude there is no substantial likelihood of a miscarriage of justice.

*Judgments affirmed.*

---

[5]There is no record support for Redding's claims that the witness overheard the police use Redding's name at the station house, or that the witness was able to see the name written on the back of the photograph of Redding.  Further, regardless of whether a desire for revenge was one of the emotions the witness experienced immediately after being a victim of a robbery, the record is barren of evidence that he was unable to make an accurate identification.