COMMONWEALTH *vs.* CHARLES KEY.

Suffolk.   September 10, 1984. — January 23, 1985.

Present: GREANEY, C.J., CUTTER, & WARNER, JJ.

*Identification. Constitutional Law,* Assistance of counsel. *Due Process of Law,* Identification. *Evidence,* Relevancy and materiality. *Practice, Criminal,* Instructions to jury.

A criminal defendant's Sixth Amendment right to counsel did not extend to a courtroom identification of the defendant by the victim made after the defendant's arrest on the victim's complaint, but just before the defendant's arraignment. [237-239]

Identification of a defendant by the victim of an armed robbery just before the defendant's arraignment was not impermissibly suggestive merely because the defendant was seated in the prisoner's dock; moreover, a finding that the victim's identification rested on her memory of the crime and her view of photographs of the defendant after the crime was warranted by the evidence. [239-241]

At the trial of indictments arising from an armed robbery on an M.B.T.A. Orange Line train, the judge did not err in excluding testimony of a Boston police officer who was involved in investigating robberies on the Orange Line at the time of the crime that he believed two other men had committed the crime in question. [241-242]

At the trial of indictments arising from an armed robbery, the judge did not err in refusing to give an instruction requested by the defendant on the possibility of an honest but mistaken identification of the defendant where the charge as a whole left the jury with the option to find that the victim was honestly mistaken in identifying the defendant. [242-243]

INDICTMENTS found and returned in the Superior Court Department on December 3, 1980.

A motion to suppress evidence was heard by *Edward H. Bennett,* J., and the case was tried before *Robert A. Mulligan,* J.

*Barry P. Wilson* for the defendant.

*Robert N. Tochka,* Assistant District Attorney, for the Commonwealth.

WARNER, J. After a jury trial in the Superior Court, the defendant was found guilty of assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A) and armed robbery (G. L. c. 265, § 17). He was given concurrent sentences of eight to ten years. Prior to trial, the defendant filed a motion to suppress evidence of the victim's identification of him made at a District Court just prior to his arraignment.[1] After hearing, a judge of the Superior Court made oral findings and denied the motion. At trial the victim testified as to the pretrial corporeal identification and also made an in-court identification of the defendant. The defendant assigns as error: (1) the denial of his motion to suppress the pretrial corporeal identification; (2) the exclusion of evidence that two other men had committed the crimes in question; and (3) the trial judge's failure to give a requested jury instruction regarding the possibility of an honest but mistaken identification.[2] We find no error and affirm the convictions.

1. *The motion to suppress.* The defendant argues that the victim's identification of him in a District Court courtroom just prior to his arraignment hearing was unreliable and resulted from impermissible police procedures in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution. We recite those facts which were found by the motion judge or which were warranted by the evidence presented at

---

[1] The victim had previously identified the defendant as her assailant in two photographic arrays. The defendant did not press the suppression of the photographic identifications before the motion judge or on appeal.

[2] The defendant also claims that prosecutorial misconduct in deliberately withholding the photograph of the defendant which the victim identified requires a new trial. Before the hearing on the motion to suppress the defendant made a specific request for this photograph. When the photograph was introduced at trial by the Commonwealth, the defendant did not raise the issue of the prosecutor's failure to produce the photograph. Thus, the defendant has no right of appellate review of this question. *Commonwealth* v. *Redding,* 382 Mass. 154, 155 (1980). Since the photograph was not exculpatory and defense counsel attempted to point out inconsistencies in the victim's testimony, the delayed disclosure did not create a substantial risk of a miscarriage of justice. See *id.* at 156; *Commonwealth* v. *Cundriff,* 382 Mass. 137, 151 (1980); *Commonwealth* v. *Lam Hue To,* 391 Mass. 301, 309 (1984).

the suppression hearing. See *Commonwealth* v. *Bernard,* 6 Mass. App. Ct. 499, 503 (1978).

During the early evening of February 25, 1979, two black males assaulted and robbed the victim while she was riding on an MBTA Orange Line train bound for Forest Hills. The victim, a graduate student at Harvard University, was reading a book when she became aware of two men hovering over her. One of the assailants, who was standing to the victim's right, flashed a knife and demanded her wedding ring. The victim responded that she could not get it off. Thereupon, the other assailant, later identified by the victim as the defendant, said "then we will cut that finger off," and proceeded to attack her with a butcher knife. Both assailants made several attempts to cut off the victim's ring finger. After these attacks had ceased, the defendant struggled with the victim over her handbag. During the struggle, which lasted between one and two minutes, the victim looked directly at the defendant, who was no more than a foot away. The train was well lighted and the victim had no difficulty seeing the defendant. When the train arrived at the Egleston Station the assailants fled with the victim's handbag. The victim got off at the Forest Hills station, where she reported the crime to the MBTA police. She described the defendant as being in his early twenties, 6'3" tall with a short "afro" hairstyle, and wearing a beige trenchcoat.[3]

The following day the victim went to a Boston police station, where she examined four books containing over two hundred photographs of black men in the same age group as her assailants. After viewing at least two books, the victim positively identified the defendant. Approximately one month later, the victim again identified the defendant, from an array of eleven photographs.

On April 4, 1979, the victim signed a complaint naming the defendant as one of her assailants. Subsequently, on April 6, 1979, the defendant was arrested and taken to the Roxbury District Court to be arraigned. The defendant was "ushered"

---

[3] She described the other assailant as being approximately 5'10" tall and wearing a short leather or vinyl jacket. The victim testified, however, that she did not see this man long enough to make an identification of him.

into the dock area in one of the courtrooms, where he waited for his proceeding to begin. There were a number of men, both black and white, in various parts of the courtroom. At about this time, the police officer who was in charge of the investigation brought the victim to the court. The officer asked the victim to enter the courtroom and look around to see if she recognized anyone. When the victim entered the courtroom, unaccompanied by the officer, the defendant was alone in the dock. The defendant was not handcuffed or restrained in any visible way. After several minutes and after having observed approximately fifteen people,[4] the victim left the courtroom and told the officer that the assailant who had had the butcher knife was inside. Some time after the victim had made the identification, the defendant's hearing commenced. During this hearing, counsel was appointed for the defendant.

A. *Right to counsel*

In *Kirby* v. *Illinois,* 406 U.S. 682 (1972), a plurality of the Supreme Court held that the Sixth Amendment right to counsel does not extend to pretrial corporeal identification procedures that take place before the defendant has been indicted or otherwise formally charged with a criminal offense. *Id.* at 689-690.[5] Under *Kirby,* the constitutional right to counsel attaches "at or after the initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Id.* at 689. See also *Moore* v. *Illinois,* 434 U.S. 220, 226-227 (1977). The *Kirby* Court reasoned that the initiation of adversary judicial proceedings triggers the start of a "criminal prosecution" to which the Sixth Amendment right to counsel is limited. *Kirby, supra* at

---

[4] The victim testified that she was "totally unfamiliar" with courtrooms and that, at the time, she was "just aware there were a lot of people in [the courtroom]." The motion judge found that the dock would "not necessarily" strike the victim as a place reserved for prisoners.

[5] Previously, in *United States* v. *Wade,* 388 U.S. 218, 236-237 (1967), the Supreme Court had held that the Sixth Amendment right to counsel attaches at postindictment lineups. The *Wade* Court characterized the postindictment lineup as a "critical stage" at which "the presence of . . . counsel is necessary to preserve the defendant's basic right to a fair trial . . . ." *Id.* at 227.

689-690. Moreover, the Supreme Court has emphasized that *Kirby* is consistent with the purpose behind the right to counsel guarantee, which is to "assure aid . . . 'when the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor.' " *United States* v. *Gouveia,* 467 U.S. 180, 188-189 (1984).

In this case, we deal with the period after the complaint and arrest but before arraignment. Interpreting *Kirby,* the Supreme Judicial Court has held that the complaint and arrest warrant procedures in Massachusetts do not constitute the initiation of adversary judicial criminal proceedings. *Commonwealth* v. *Smallwood,* 379 Mass. 878, 884-885 (1980). See also *Commonwealth* v. *Mandeville,* 386 Mass. 393, 401 (1982). The court in *Smallwood* pointed out that District Court clerks and assistant clerks may receive complaints, administer oaths, and issue warrants in the name of the court. *Smallwood, supra* at 885. Thus, recognizing the informal and ex parte nature of the complaint and arrest warrant process, the court concluded: "It would be anomalous to hold that the right to counsel attaches at this stage when indeed a . . . suspect has no right to be heard in the proceeding." *Id.* Accordingly, under *Kirby* and *Smallwood,* adversary judicial criminal proceedings are initiated when the defendant is first brought before a magistrate or judge and has an opportunity to be heard.

This conclusion is supported by *Moore* v. *Illinois,* 434 U.S. 220 (1977), where a witness testified as to an out-of-court identification that had taken place at the defendant's preliminary hearing. After recognizing that the prosecution had commenced, under Illinois law, when the victim's complaint was filed in court, the *Moore* Court held that "adversary judicial criminal proceedings" were initiated when the ensuing preliminary hearing occurred. *Id.* at 228. Similarly, even though a complaint had issued in the instant case, the defendant's Sixth Amendment right to counsel did not attach until his hearing in the Roxbury District Court had commenced. Accord *United States* v. *Duvall,* 537 F.2d 15, 20-22 (2d Cir.), cert. denied, 426 U.S. 950 (1976). Since the challenged identification took

place prior to the defendant's hearing,[6] the defendant was not deprived of his Sixth Amendment right to counsel.

B. *Due process*

In *Stovall* v. *Denno,* 388 U.S. 293 (1967), the Supreme Court established a due process right to exclude identifications resulting from procedures that were "unnecessarily suggestive and conducive to irreparable mistaken identification." *Id.* at 302. The due process clause, however, does not require the per se exclusion of identification testimony where the suggestiveness of the procedure has not rendered the identification unreliable. *Manson* v. *Brathwaite,* 432 U.S. 98, 114 (1977). Contrast *Commonwealth* v. *Donovan,* 392 Mass. 647 (1984) (per se exclusionary rule where Sixth Amendment right to counsel violated). The *Brathwaite* Court emphasized that "reliability is the linchpin in determining the admissibility of identification testimony." 432 U.S. at 114. The reliability of the identification is to be judged according to the following factors: "[1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of his prior description . . ., [4] the level of certainty demonstrated at the confrontation, and [5] the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Id. Neil* v. *Biggers,* 409 U.S. 188, 199-200 (1972). For a thorough discussion and analysis of the relevant principles and cases, see *Commonwealth* v. *Hicks,* 17 Mass. App. Ct. 574, 576-578 (1984).

At the threshold, the defendant has the burden of showing, by a preponderance of the evidence, that impermissibly suggestive procedures were used at the particular confrontation. *Commonwealth* v. *Simmonds,* 386 Mass. 234, 239 (1982). Such a showing must depend on the totality of the circumstances of the challenged confrontation. *Id.* In the instant case, the chal-

---

[6] Contrast *Martin* v. *Donnelly,* 391 F. Supp. 1241, 1247-1248 (D. Mass. 1974) (identification occurred during the defendant's arraignment); *Commonwealth* v. *Donovan,* 392 Mass. 647 (1984) (identification took place on police request, and after the defendant had been arraigned and counsel had been appointed to represent him).

lenged identification took place while the defendant was alone in the prisoner's dock awaiting the start of his hearing. "We recognize that a degree of suggestiveness inheres in any identification of a suspect who is isolated in a court room. Nevertheless, such isolation does not, in itself, render the identification impermissibly suggestive." *Commonwealth* v. *Napolitano,* 378 Mass. 599, 604 (1979). See *Commonwealth* v. *Cincotta,* 6 Mass. App. Ct. 812, 818 (1979). Here, the motion judge concluded that the courtroom confrontation was not "unduly suggestive." The judge based this conclusion on his finding that at the time of the confrontation there were other black males in the courtroom and, more important, on his findings that the victim was not familiar with courtrooms and would not "necessarily" realize the dock was a place reserved for prisoners. Moreover, the judge implicitly found that the victim's identification rested upon her memory of the crime and her view of the photographs.[7] We think the evidence supports the judge's findings and conclusion.

Even if we were to hold that the identification procedure was impermissibly suggestive, we would conclude that the identification was reliable under the *Biggers-Brathwaite* test. The victim had a good opportunity to view her assailant, whom she directly faced at close range in a well-lighted area for between one and two minutes.[8] See *Commonwealth* v. *Sampson,* 7 Mass. App. Ct. 514, 519 (1979). The victim testified that, during the struggle over her handbag, she looked directly at the defendant and no place else. See *Commonwealth* v. *Redding,* 382 Mass. 154, 158 (1980); *Commonwealth* v. *Sampson, supra* at 519; *Commonwealth* v. *Hicks,* 17 Mass. App. Ct. at 578-579. Prior to the corporeal identification, the victim at no time misidentified or failed to identify the defendant. Contrast *Commonwealth* v. *Botelho,* 369 Mass. 860, 869 (1976). She identified the defendant in two separate photo-

---

[7] The judge characterized the victim as the "sort of woman who would resolve a personal doubt in favor of an accused, rather than against an accused," and "who would acknowledge a mistake if she made one."

[8] The motion judge found that the victim testified in this respect "clearly, convincingly and credibly."

graphic arrays[9] and accurately described the defendant's essential physical features. The victim demonstrated no hesitancy at the time of the confrontation, which took place approximately six weeks after the crime. This period of time is consistent with a reliable identification, especially in view of the prompt recognition of the defendant's photograph on the day following the assault and robbery. Upon review of the totality of the circumstances, we conclude that the factors of reliability outweighed any possible corrupting effect of suggestiveness in the identification procedure.[10]

2. *Evidence of other crimes*

A Boston police officer, who was involved in investigating robberies on the MBTA Orange Line during February and March of 1979, testified at a voir dire hearing that he believed two other men had committed the crime in question. His testimony was based in part on the fact that he had never known the defendant to be involved in violent crime.[11] In addition, he testified that another police officer had told him that the two men were suspects in other crimes. The witness, however, was not aware of any other robberies on the Orange Line that were similar in time or method to the crime in this case. Moreover, the booking sheets of the two men revealed no similar crimes or any joint criminal ventures.[12] The trial judge correctly ruled that the proffered testimony about the two men was inadmissible.

A defendant is entitled to introduce evidence of other crimes so similar in time and method of operation to the ones for which he was indicted as to cast doubt on his identification.

---

[9] In the circumstances, the fact that the photograph of the defendant was the same in both arrays is of no consequence. See *Commonwealth* v. *LaPierre*, 10 Mass. App. Ct. 641, 644 (1980), and cases cited.

[10] Our decision should not be construed to encourage an identification procedure which is, as the motion judge observed, fraught with danger.

[11] The officer testified that he was a friend of the defendant and had used him in the past as an informant.

[12] Two days before trial, the victim selected the defendant's photograph from an array of twelve photographs. This array included photographs of the two men.

See *Commonwealth* v. *Keizer,* 377 Mass. 264, 266-268 (1979); *Commonwealth* v. *Jewett,* 392 Mass. 558, 562-563 (1984); *Commonwealth* v. *Walker,* 14 Mass. App. Ct. 544, 552 (1982). In *Keizer,* for example, there were "substantial connecting links" between the offense charged and the subsequent crime — both involved a crime of the same type, committed by similar methods and by men of similar description. *Keizer, supra* at 267. In this case, however, the proffered evidence did not relate to similar crimes or similar methods. Rather, it amounted, as the trial judge observed, to an opinion, of a Boston police officer who knew the defendant, on the innocence of the defendant.

3. *Jury instructions*

In *Commonwealth* v. *Rodriguez,* 378 Mass. 296, 302, 310-311 (1979), the Supreme Judicial Court set forth model instructions, suggested by *United States* v. *Telfaire,* 469 F.2d 552, 558-559 (D.C. Cir. 1972), to assist a jury in their assessment of identification testimony. Prior to closing arguments, defense counsel made a timely request for the *Rodriguez* instructions and for an additional instruction, set out in the margin,[13] on the possibility of an honest mistake in the victim's identification. The judge gave the *Rodriguez* instructions in full with specific references to the testimony in the case. The defendant claims error in the failure of the judge to include the requested "honest mistake" instruction in the charge.

This case was tried prior to *Commonwealth* v. *Pressley,* 390 Mass. 617 (1983), in which the Supreme Judicial Court held that fairness to a criminal defendant "compels the trial judge to give an instruction on the possibility of an honest but mistaken identification when the facts permit it and when the defendant requests it." *Id.* at 620. *Pressley* was of course decided in a context in which the judge had instructed the jury that identification testimony was to be considered solely on

---

[13] "You must not only determine the credibility of the witnesses, but, taking it a step beyond this, you must appraise the witnesses' testimony in the light of their testimony possibly being totally credible, totally sincere, and yet totally incorrect, on the issue of whether or not the defendant was in fact the perpetrator of the crimes alleged."

the issue of credibility, thus eroding the *Rodriguez* charge he had previously given. *Id.* at 619-620. Contrast *Commonwealth v. Breese,* 381 Mass. 13, 18 (1980). It is well settled that a judge need not grant a particular instruction so long as the charge, as a whole, adequately covers the issue. See *Commonwealth v. Sherry,* 386 Mass. 682, 696 (1982); *Commonwealth v. Albert,* 391 Mass. 853, 857-858 (1984); *Commonwealth v. MacDougall,* 2 Mass. App. Ct. 896 (1974). We are concerned "with the impressions . . . [the instructions] conveyed to a reasonable juror." *Commonwealth v. Simmons,* 11 Mass. App. Ct. 156, 163 (1981). See *Commonwealth v. Moreira,* 385 Mass. 792, 794 (1982).

Here, the trial judge sensitized the jury to the possibility of a mistaken identification by referring to the actual testimony in the case. Specifically, he explained that there was a conflict in the testimony by referring to the alibi evidence. Accordingly, the judge instructed the jury to consider "the opportunity or lack of opportunity of the [identifying] witness to see and to know the facts concerning which he or she is testifying." In addition, the *Rodriguez* charge itself (announced in response to a claim of error in the failure to instruct on the possibility of mistaken identification) directs the jury's attention to the question of a possible mistaken identification. *Rodriguez, supra* at 301-302. Following the *Rodriguez* charge, the judge repeated that the jurors should consider any occasion in which the victim failed to make an identification or made an "inconsistent identification." He urged the jury to consider the "reliability" and the "accuracy" of the identifications. In short, the judge "avoided the vice of linking the reliability of the identification to the victim's veracity." *Commonwealth v. Simmons,* 11 Mass. App. Ct. at 162. See *Commonwealth v. Napolitano,* 378 Mass. at 609-610; *Commonwealth v. Pressley,* 390 Mass. at 620. The charge as a whole left the jury with the option to find that the victim was honestly mistaken in identifying the defendant.

*Judgments affirmed.*