COMMONWEALTH *vs.* RONALD WALKER. July 20, 1983. *Search and Seizure,* Threshold police inquiry, Automobile. *Constitutional Law,* Search and seizure. *Practice, Criminal,* Sentence.

1. Walker was convicted of several offenses mentioned in part 2 of this opinion. Before trial, he filed a motion to suppress articles taken without a search warrant from a Cadillac automobile he had been driving on May 22, 1980, at 3:15 A.M. A Superior Court judge (the motion judge) denied the motion to suppress on December 3, 1981, upon finding the following facts. See, as to the weight to be given to his findings and conclusions, *Commonwealth* v. *Worlds,* 9 Mass. App. Ct. 162, 166 (1980).

Officer Mason of the Lowell police learned that Officers DiCalogero and Peterson of the Tewksbury police had a black male in custody at the Caswell Motel on Main Street in Tewksbury. He proceeded to the motel and found that the man in custody was not one Buchanan, suspected of a recent robbery in Lowell. The man, however, was another black male, named Lucas, wanted by the Lowell police for a separate offense. Officer Mason informed Officer DiCalogero that the robbery suspect was a black male named Buchanan, in his early twenties, about 160 pounds in weight, and about six feet tall.

Officer DiCalogero remained in the vicinity engaging in surveillance of the motel, while Officer Mason started to Lowell with Lucas. As the motion judge found, the former officer thought "that the robbery for which Buchanan was wanted had occurred the same night and that Buchanan might come to the motel." The robbery in fact had occurred a few days earlier.

After a short interval, Officer DiCalogero saw a Cadillac, driven by a young black male, come along Main Street from Lowell, turn into the motel parking lot, and stop at the door of a motel unit. The officer followed the Cadillac into the parking area and stopped his cruiser about five feet behind the Cadillac. While doing so, by police radio he broadcast that he thought he had the man for whom the Lowell police were looking. He soon was joined by "backup" police. By then the Cadillac and its interior were illuminated by the headlights and searchlight of the police cruiser. The officer and the Cadillac's driver got out of their vehicles. The officer (then in uniform) asked the driver (in fact Walker, the defendant) for identification. Officer DiCalogero, when asked "why," told Walker that he fitted the general description of a man for whom the Lowell police were looking. The defendant said his name was Cleveland Scott and produced a paper bearing that name. When asked for identification, he did not produce either a driver's license or an automobile registration. Then asked what his real name was, he replied "James Baldwin," and said he had borrowed the vehicle from a friend, Ronnie Walker.

The officer could see through the closed driver's window of the Cadillac the handle of a revolver protruding from a pocket of a rolled up jacket on the front seat. He entered the unlocked vehicle to secure the revolver. There he saw on the floor a partly opened "carry-all" in which were plainly visible paper packets containing a white powder which the officer from his experience believed to be heroin. Four more packets were attached to the visor over the driver's seat. The revolver was loaded with three live cartridges.

On the somewhat conflicting evidence "and the reasonable inferences to be drawn," the motion judge could properly conclude (despite the general character of the description of Buchanan) that Officer DiCalogero's "articulable suspicion" justified him in asking Walker to identify himself. At least he could inquire whether the Cadillac's driver was Buchanan. The officer could suspect Buchanan of being armed.

Walker's initial evasive answers were promptly shown to be false, thus making further threshold inquiry appropriate. The answers also permitted an inference that another person owned the Cadillac, which might have been stolen or used without authority. A substantial part of the heroin, as well as the revolver, could be found on the evidence to have been within plain view. See *Texas* v. *Brown*, 460 U.S. 730, 735-744 (1983).

Taking the cumulative effect of what Officer DiCalogero knew when he talked to Walker outside of the parked Cadillac and what he could

infer from what he then saw and the evasive answers he received to his initial questions, the motion judge was warranted in refusing to suppress the items then discovered. We need not determine whether the officer's action amounted to a technical "stop," where the Cadillac had come to rest at its apparent destination without any orders from the officer. A simple inquiry to ascertain whether the occupant of the Cadillac was Buchanan, in any event, was authorized. *Terry* v. *Ohio*, 392 U.S. 1, 16-19 (1968). This is so even if there existed less than probable cause to arrest or to search. See *United States* v. *Brignoni-Ponce*, 422 U.S. 873, 881-882 (1975). See discussion in *Kolender* v. *Lawson*, 461 U.S. 352, 358-362, and in the concurring opinion of Mr. Justice Brennan, at 362-366.

We think that the case is governed by *Commonwealth* v. *Almeida*, 373 Mass. 266, 269-273 (1977). See *United States* v. *Mendenhall*, 446 U.S. 544, 552-560 (1980); *United States* v. *Cortez*, 449 U.S. 411, 417-421 (1981); *Michigan* v. *Summers*, 452 U.S. 692, 697-701 (1981); *New York* v. *Belton*, 453 U.S. 454, 458-463 (1981); *United States* v. *Ross*, 456 U.S. 798, 806-825 (1982); *Michigan* v. *Long*, 463 U.S. 1032, 1045-1052 (1983). See also *Commonwealth* v. *Ortiz*, 376 Mass. 349, 352 (1978); *Commonwealth* v. *Hason*, 387 Mass. 169, 172 (1982). Compare *Commonwealth* v. *Silva*, 366 Mass. 402, 404-410 (1974); *Commonwealth* v. *Loughlin*, 385 Mass. 60, 62-64 (1982, in which, however, at 62, an initial inquiry was held proper); *Commonwealth* v. *Navarro*, 2 Mass. App. Ct. 214, 217-222 (1974). Compare also *Commonwealth* v. *Ferrara*, 376 Mass. 502, 508 (1978); *Commonwealth* v. *Podgurski*, 386 Mass. 385, 388-389 (1982, where it was stated, at 388, that observation from outside the vehicle would have been permissible), cert. denied, 459 U.S. 1222 (1983); *Delaware* v. *Prouse*, 440 U.S. 648, 654-663 (1979); *Brown* v. *Texas*, 443 U.S. 47, 51 (1979); *Florida* v. *Royer*, 460 U.S. 491, 497-505 (1983); *United States* v. *Place*, 462 U.S. 696, 702-710 (1983).

2. Walker, after the denial of the motion to suppress, was tried before another judge sitting without a jury and was convicted of possession of heroin with intent to distribute (G. L. c. 94C, § 32[a], as in effect prior to St. 1982, c. 458), carrying a firearm in a motor vehicle, and receiving stolen property (the firearm). Other cases were placed on file. In view of *Commonwealth* v. *Gagnon*, 387 Mass. 567, S.C., 387 Mass. 768 (1982), appeal dismissed and cert. denied, 461 U.S. 921 (1983), the case must be remanded to the Superior Court with instructions to dismiss so much of the indictment, under G. L. c. 94C, § 32(a), as charges more than the included offense of possession of heroin. Walker may be resentenced for that offense in accordance with G. L. c. 94C, § 34. See *Commonwealth* v. *Payne*, 15 Mass. App. Ct. 930, 931 (1983). The other judgments are affirmed.

*So ordered.*

*Nona E. Walker* for the defendant.

*Jeffrey Bruce Abramson,* Assistant District Attorney, for the Commonwealth.