COMMONWEALTH *vs.* JEFFREY CROWLEY.

No. 89-P-931.

Middlesex. March 8, 1990. - July 18, 1990.

Present: BROWN, DREBEN, & FINE, JJ.

*Constitutional Law*, Search and seizure, Assistance of counsel. *Search and Seizure*, Threshold police inquiry. *Identification. Evidence*, Identification, Testimony of third party respecting identification. *Practice, Criminal*, Instructions to jury, Assistance of counsel.

In a criminal case, the judge correctly determined that the police, having grounds to stop the defendant to make a threshold inquiry, properly, on the basis of the defendant's conflicting statements and implausible explanation for his presence in the area, detained the defendant briefly in order to transport him the short distance to the scene of a bank robbery for purposes of identification. [4-6]

In a criminal case, one-on-one confrontations between eyewitnesses and the defendant arranged by the police promptly after a bank robbery were not demonstrated to be impermissibly suggestive. [6]

At the trial of indictments for armed robbery, a police officer's testimony corroborating a bank teller's testimony with respect to the teller's identification of the defendant's photograph was properly admitted in evidence. [6-7]

In the circumstances of the trial of a criminal case there was no error in the judge's not instructing the jury on the possibility of good faith erroneous identification of the defendant, where the defendant did not request such an instruction. [7-8]

At a criminal trial, error, if any, in the judge's instructions to the jury with respect to a sneaker print that had been the subject of testimony but not introduced in evidence was not shown to be prejudicial to the defendant. [8-9]

No shifting of the burden of proof in a criminal case was demonstrated in the judge's instructions to the jury with respect to certain evidence, considered in the context of the charge as a whole. [9]

A defendant convicted of armed robbery of a bank did not show that he was deprived of the effective assistance of counsel. [9-10]

INDICTMENTS found and returned in the Superior Court Department on April 1, 1987.

The cases were tried before *Hiller B. Zobel*, J.

*Kathleen B. Rogers* for the defendant.

*LaDonna J. Hatton*, Assistant District Attorney, for the Commonwealth.

DREBEN, J. The principal issue raised in this case is whether the police, after subjecting the defendant to a *Terry*-type stop,[1] were justified in taking him back a short distance to the scene of the crime for purposes of a prompt identification. In this appeal from his convictions of several offenses[2] arising out of an armed robbery at the Cambridge Savings Bank in Porter Square, Cambridge, the defendant also argues that the identifications were impermissibly suggestive, that testimony concerning an out-of-court identification was improperly admitted in evidence as it did not meet the requirements of *Commonwealth* v. *Daye*, 393 Mass. 55, 60 n.8 (1984), that the judge gave incorrect instructions, and that the defendant had ineffective assistance of counsel. We affirm the convictions.

1. *Detention and transportation of the defendant to the scene of the robbery.* Although troubled by the lateness of the defendant's motion to suppress[3] — it came a week before

---

[1] *Terry* v. *Ohio*, 392 U.S. 1 (1968).

[2] Two counts of masked armed robbery, three counts of stealing and confining, and one count of carrying a firearm without a license.

[3] Counsel's explanation for the tardiness of his motion, see Mass.R.Crim.P. 13(d)(2), 378 Mass. 873-874 (1979) (setting time for filing pretrial motions), was that he had expected the defendant to change his plea.

trial — the trial judge held a voir dire to determine the admissibility of the identification of the defendant as one of the robbers when he was brought back to the Cambridge Savings Bank, where the robbery took place.

Detective Kathleen Murphy, the only witness at the voir dire, gave the following account of the events leading to the identifications. At 1:05 P.M. on March 6, 1987, a police broadcast reported that an armed robbery had occurred at the Cambridge Savings Bank in Porter Square, that "someone in the bank was on the telephone giving the radio room a rundown of what had happened," that several persons had bailed out of a car emitting orange smoke,[4] that two suspects on foot were still at large, and that one was running down Hancock Street near the bank. In response to the radio communication, Detective Murphy and Officer Centrella, in separate unmarked cruisers, proceeded to Hancock Street where, at a distance of approximately one to one and one-half blocks from the bank, they saw a lone man, the defendant, running in a white sweatshirt. Centrella's cruiser pulled over to the defendant who was now walking. He was out of breath and sweating. Murphy joined Centrella; the latter asked the defendant his name and what he was doing.

He replied that he was from Chelsea, that he was out for a walk and that he always took long walks. He next said he was living in Everett, but produced a license showing a Charlestown address. Becoming increasingly suspicious, the police officers placed the defendant in the back seat of the cruiser to go back the short distance to the bank to see if eyewitnesses would identify the defendant as one of the robbers.

At approximately 1:30 P.M., a teller, who had been on duty at the bank during the robbery, looked at the defendant while he was out of the automobile. She "made a lot of shrugging with the shoulders, and was taken away."[5] There-

---

[4] The orange smoke came from the stolen money which had contained a dye pack.

[5] At trial the first teller identified the defendant as the first robber. She testified that her focus had been on the first of the three robbers who en-

after, a second teller was brought out of the bank. She nodded her head "Yes." The defendant was then placed under arrest and taken to the Cambridge police station for booking.

At the voir dire, defense counsel conceded that the police officers had a right to make a threshold inquiry, but argued that the police did not have a right to put the defendant in the back seat of the car and transport him to the bank. We agree with the trial judge that the police actions, including "detaining [the defendant] for the limited purpose of taking him back to the scene to have him confront the bank tellers," were appropriate responses to their escalating suspicions that the defendant was involved in the robbery.

The following circumstances provided the reasonable and articulable suspicion justifying a "*Terry*-type" stop. A few minutes after the robbery, as a result of a radio communication, the police had grounds to believe that one of the robbers was on Hancock Street, a location close to the bank, seeking to flee the scene. The defendant was the sole person seen running on that street. Once stopped, the defendant gave conflicting accounts of where he lived, as well as an implausible explanation for his presence in Cambridge. The increasing suspicion of the officers justified prolonging the stop and enlarging the scope of the threshold inquiry. See *Commonwealth* v. *Walker*, 16 Mass. App. Ct. 955, 956-957 (1983); *United States* v. *Viegas*, 639 F.2d 42, 46 (1st Cir.), cert. denied, 451 U.S. 970 (1981) (case presents common picture of "a proper progression of escalating responses to circumstances which generated a mounting degree of suspicion").

The question is "whether the intrusiveness of the seizure" — here transporting the defendant the short distance back to the bank for identification purposes — "was proportional to the degree of suspicion that prompted the intrusion." *Commonwealth* v. *Borges*, 395 Mass 788, 793 (1985).[6] Had the

tered the bank, that at the showup she recognized the defendant as that person, that her mouth dropped open when she saw him on his return to the bank, and that she was so scared that she could not then tell the police that the man was the first robber.

[6]Contrary to the defendant's suggestion, the criteria of "forcible detention and restriction of movement — do not serve to distinguish an arrest

bank tellers been brought to the scene, there is little doubt that the defendant could have been detained for the time, if short, that it would have taken for them to appear. "An expeditious collateral inquiry which might result in the suspect's arrest or prompt release is not unreasonable when done to meet the practical demands of effective criminal investigation and law enforcement." *Commonwealth* v. *Salerno*, 356 Mass. 642, 646-647 (1970) (citations omitted). Although here the intrusion was greater,[7] the transportation did not unduly prolong the detention since only twenty minutes was involved.

As in *People* v. *Hicks*, 68 N.Y.2d 234, 243 (1986), "the authorities knew that a crime had . . . been committed; the total period of detention was [short]; the crime scene to which the defendant was taken was very close, and the eyewitnesses were there; and there [was] no proof of significantly less intrusive means available to accomplish the same purpose." As in *Hicks*, the "[d]efendant might, alternatively, have been momentarily detained where he had been stopped and the witnesses brought there, but such a procedure would have entailed first securing defendant . . . and then arranging transportation for the witnesses, possibly even a more time-consuming process than that chosen." *Id.* at 242. We conclude, as did the New York Court of Appeals, that "given the time and distance involved" taking the suspect to the witnesses and not the witnesses to the suspect "is a difference without constitutional significance." *Ibid.* See also the following cases permitting police to transport the defendant to the witnesses to confirm or dispel the investigators' suspicions quickly: *United States* v. *Wylie*, 569 F.2d 62, 70 (D.C. Cir.

---

from an investigatory stop. A complete restriction on liberty of movement occurs in the typical investigatory stop." The intrusiveness permitted is that which is proportional to the degree of suspicion which prompted the stop or which was generated by it. *Commonwealth* v. *Borges*, 395 Mass. at 792 n.3, 794. See also *Commonwealth* v. *Blake*, 23 Mass. App. Ct. 456, 460-461 (1987). We do not consider whether the police had probable cause to arrest the defendant prior to the identification at the bank.

[7]Detective Murphy arrived at Hancock Street at approximately 1:10 - 1:15 P.M. and the first teller saw the defendant at approximately 1:30 P.M.

1977), cert. denied, 435 U.S. 944 (1978); *United States* v. *Short*, 570 F.2d 1051, 1054 (D.C. Cir. 1978); *Pliska* v. *Stevens Pt.*, 823 F.2d 1168, 1176 (7th Cir. 1987); *State* v. *Mitchell*, 204 Conn. 187, 197-200, cert. denied, 484 U.S. 927 (1987); *Buckingham* v. *State*, 482 A.2d 327, 334 (Del. 1984); *Wilkerson* v. *United States*, 427 A.2d 923, 925-926 (D.C.), cert. denied, 454 U.S. 852 (1981); *People* v. *Hines*, 94 Ill. App. 3d 1041, 1050 (1981); *State* v. *McKissic*, 415 N.W.2d 341, 345 (Minn. Ct. App. 1987); *State* v. *Wheeler*, 108 Wash. 2d 230, 236-237 (1987). See generally LaFave, Search & Seizure § 9.2(g) (2d ed. 1987 & Supp. 1990).[8]

2. *Suggestiveness of showup.* Based on the claim that television cameras and media reporters were present at the time of the showup at the bank, the defendant contends that the encounter was impermissibly suggestive. Officer Murphy testified at the voir dire that the media persons were asked to leave prior to the showup and that they complied. At trial, another police officer testified to the same effect. Moreover, although the showup was highly suggestive, in the circumstances, it was not impermissibly so. Due process rights are not violated when police arrange a one-on-one confrontation between an eyewitness and a suspect promptly after the occurrence of a criminal event. *Commonwealth* v. *Williams*, 399 Mass. 60, 67 (1987).

3. *Hearsay identification.* At trial, the first teller testified that, two or three days after the robbery, she identified the

---

[8]There are, however, cases which appear to take a contrary view. See, e.g., *People* v. *Harris*, 15 Cal. 3d 384 (1975) (ordinarily there exist less intrusive and more reasonable alternatives to prearrest transportation), cert. denied, 425 U.S. 934 (1976); *State* v. *Crowder*, 1 Haw. App. 60, 63-64 (1980); *Commonwealth* v. *Lovette*, 498 Pa. 665, 676 (1982), cert. denied, 459 U.S. 1178 (1983). (The latter two cases are based on a view of arrest differing from the one in this State. See note 6, *supra.*) Additional cases have held transporting of the suspect inappropriate where police did not know a crime had been committed. See, e.g., *People* v. *Cobbin*, 692 P.2d 1069 (Colo. 1984) (police action excessive when, before knowing that a crime had been committed, officers executed second search knowing defendant was unarmed; they handcuffed him and transported him to scene where possibly there had been a robbery); *People* v. *Bloyd*, 416 Mich. 538, 547-548 (1982) (officers had no knowledge of a crime, and transport was not for purposes of a showup but to see if there had been a break-in).

defendant's picture at the Cambridge police station as the "first guy that came in the bank." A police officer who had been present at the station corroborated that the teller had identified the defendant's picture. Recognizing that a nonidentifying witness may testify to corroborate an extrajudicial identification if the testimony does not differ in material respects from that of the identifying witness, *Commonwealth* v. *Daye*, 393 Mass. 55, 60 n.8 (1984); *Commonwealth* v. *Rivera*, 397 Mass. 244, 249 (1986), the defendant points to an alleged material variation between the testimony of the officer and that of the first teller. The officer reported that the teller, at the time of the identification, said "this is the guy that was standing next to me in the bank." The teller's trial testimony, on the other hand, was that the first robber to enter had stood next to her coworker. There was no inconsistency, let alone a material one. The teller testified that there were three robbers who came into the bank, that her focus was on the first robber, that he was in the bank for more than five minutes, that the robbers "revolved," that is, moved around looking through everything, and that the first robber put a gun next to her desk and opened her cash drawer. According to her testimony it was only at the time the robbers were leaving that the first robber was next to her coworker. The teller's testimony does not indicate that the first robber did not spend considerable time next to her. The officer's corroboration of the teller's identification was properly admitted in evidence.

4. *Jury instructions.* (a) Relying on *Commonwealth* v. *Pressley*, 390 Mass. 617, 620 (1983), the defendant claims that the judge erred in not instructing the jury on the possibility of good faith error in the tellers' identifications. This, he argues, was particularly important, not only because identification was a key issue, but because the first robber wore a nylon mask.[9] *Pressley*, however, requires such an instruction

---

[9] The first teller testified that even with the nylon mask she observed the defendant's nose (pointed not flat), that he was tall, very strong, and had short hair. The second teller identified him by means of his build and his clothes.

"*when the defendant requests it*" (emphasis supplied). *Ibid.* No request was made and we discern no error. Counsel, in his closing argument, forcefully argued the possibility of an honest but mistaken identification. See *Commonwealth v. Waters*, 399 Mass. 708, 715 (1987). More important, the judge, in his instructions, a portion of which are set forth in the margin,[10] "avoided the vice of linking the reliability of the identification to the victim's veracity," *Commonwealth v. Key*, 19 Mass. App. Ct. 234, 243 (1985) (citations omitted), and, taken as a whole, the charge "left the jury with the option to find that the [witnesses were] honestly mistaken in identifying the defendant." *Ibid.*

(b) A police officer testified that a sneaker print had been taken from a countertop at the bank, but that he did not recall if the sneaker print matched anybody's sneaker. During their deliberations, the jury sent a question to the judge asking whether the print was in evidence and could they have it, and, if not, "why was it withheld?" The judge responded by instructing the jury to consider only the testimony ("what you heard in the courtroom") and the exhibits ("what you have in the juryroom") and not to speculate about "matters that are not in evidence." Even if the instruction created a *Bowden*[11] problem, the error was harmless. Because all of the

---

[10]"Let me emphasize to you that you are not, no jury is, sitting as a board of inquiry to decide if somebody has committed perjury. The question is not necessarily whether someone is lying to you; the question is: Do you believe that what the person is telling you is accurate and true? People very frequently make mistakes; people very frequently believe they are saying something when it's not so. That is what you have to analyze. You have to analyze the believability of the testimony.

"I can suggest a few tests but they are not in any way binding on you. You may wish to consider what opportunity to observe the facts that a witness is telling us about the witness has had. You may wish to consider the capacity for observation. Does this person impress you as somebody who takes in what's going on?" (The judge listed other tests, e.g., ability to remember, etc.)

[11]In *Commonwealth v. Bowden*, 379 Mass. 472, 485-486 (1980), the court held that the trial judge had improperly instructed the jury that "the nonexistence of certain scientific tests and other evidence was not to be considered in reaching a judgment." This was error. "The fact that certain tests were not conducted or certain police procedures not followed could raise a reasonable doubt as to the defendant's guilt."

three robbers wore "Nike" sneakers, evidence that the defendant's shoes did not match the print would not have aided the defendant. See *Commonwealth* v. *Mitchell*, 20 Mass. App. Ct. 902, 903 (1985) (While a "positive fingerprint test would have ruined the defendant, a negative fingerprint test could not have been particularly helpful to him").

(c) Laying stress on certain words in the judge's charge which, looked at alone, are troublesome, the defendant claims that the judge shifted the burden of proof by stating: "It's entirely appropriate for you to take the district attorney at his word, and to judge on the basis of *that* evidence" (emphasis supplied). When taken in context, what the judge meant was that it was appropriate for the jury, using a magnifying glass, to consider evidence of similarities, suggested by the assistant district attorney, between items in evidence and items shown in the bank photographs of the robbery.

At the request of defense counsel, the judge gave the curative instruction set forth in the margin.[12] Viewing the charge as a whole, and the fact that the judge repeatedly emphasized that the Commonwealth had the burden of proof, that the jury were to decide the facts, and that argument was not evidence, we conclude that the language objected to was not reversible error.

5. *Ineffective assistance of counsel.* To substantiate his claim of ineffective assistance of counsel, the defendant points to the failure of counsel to file a motion to suppress, to request an "honest but mistaken identification" instruction, to investigate physical evidence, and to interview the Commonwealth's witnesses. Since a voir dire was held on the identification issue, the point is academic as the trial judge considered the grounds on which the identifications might have been suppressed. See *Commonwealth* v. *Riley*, 17 Mass.

---

[12]"I said to you that it was appropriate for you to take the district attorney at his word when he called certain points to your attention. It is also appropriate for you not to take the district attorney at his word on that subject, and to disregard what the district attorney said, if you so wish. In other words, ladies and gentlemen, it's entirely up to you how you focus on the main issue of the case, and then if you are satisfied on the main issue, how you go on to other issues. It's all entirely up to you . . ."

App. Ct. 950, 951 (1983). Because we have held the identification instructions adequate, the defendant has not shown, as to this claim, that he was denied an "otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). The additional argument that counsel did not make a sufficient investigation is not borne out by the record before us.

*Judgments affirmed.*