COMMONWEALTH *vs.* WILLIAM J. KIMBALL.

No. 93-P-1194.

Worcester. September 23, 1994. - November 9, 1994.

Present: BROWN, KASS, & FINE, JJ.

*Search and Seizure,* Threshold police inquiry, Automobile, Probable cause. *Threshold Police Inquiry. Constitutional Law,* Search and seizure.

In the absence of a traffic violation or a visible unlawful vehicular defect or any specific articulable fact warranting a threshold inquiry, there was no basis for a police officer's investigatory stop of an automobile [606-607]; further, there was no lawful basis for the officer's search of the automobile thereafter: the defendant's motion to suppress drugs found in a jacket in the vehicle should have been allowed [607-609].

INDICTMENT found and returned in the Superior Court Department on February 10, 1992.

A pretrial motion to suppress evidence was heard by *Herbert F. Travers, Jr.,* J., and the case was tried before *Gerald F. O'Neill, Jr.,* J.

*Peter M. Onek,* Committee for Public Counsel Services, for the defendant.

*James P. McKenna,* Assistant District Attorney, for the Commonwealth.

KASS, J. This much is common ground: the defendant's Pontiac automobile, which Trooper Daniel J. Viel stopped on Interstate Highway 84 at 11:15 A.M. on December 27, 1991, was a disreputable looking jalopy. The car was, however, proceeding within the speed limit and was not, according to the record, found in violation of any law relating to traffic or the roadworthiness of motor vehicles. That a car is a junk heap is not of itself a sufficient reason for a stop. We think the State trooper operated on a hunch and lacked lawful articulable reasons to stop and then search the defendant's car.

Accordingly, the motion to suppress cocaine seized in the search of that car should have been allowed, and the judgment of conviction for trafficking in more than 200 grams of cocaine is reversed.

We take the pertinent facts from helpful findings of fact made by the judge who acted on the motion to suppress. Trooper Viel's cruiser was stopped perpendicular to the flow of eastbound traffic when he noticed the defendant's car. What caught Viel's attention was that a side window just rear of the driver's window was smashed out and covered by cloth; there was a hole where the trunk lock should have been; and the rear license plate was askew and held by only one screw. These faults disposed Trooper Viel to think the car had been stolen, a suspicion that he said was heightened because neither the driver nor the passenger (who was the defendant) in the Pontiac looked at him but, rather, looked straight ahead. While he followed the Pontiac, Viel noticed the passenger disappear from view for an instant, as if he had ducked down for some purpose.

Trooper Viel pulled the car over. The way it came to a stop in the breakdown lane was normal. As Trooper Viel approached the vehicle, the two men in it sat still, facing forward; they did not look at him. Trooper Viel thought this peculiar and became sufficiently concerned about his safety so that he unlatched the holster on his side arm. He asked the driver for his license and registration and the driver, who was John Kimball, the brother of the defendant William J. Kimball, produced a facially valid Connecticut operator's license and a Maine registration that was consistent with the Maine plates that the car carried. The car was registered to William Kimball. After glancing at the documents, Trooper Viel put them in his pocket. The motion judge inferred that the police officer did so to have the papers when making a stolen car check by radio. That inference, however, is contrary to the trooper's testimony at the suppression hearing. When asked why he pocketed the license and registration that John Kimball had displayed, Trooper Viel testified, "I put them in my pocket in case something happened, I would

have — I would have the identity of whoever I stopped in my pocket, or at least the driver." Trooper Veil then asked the passenger, William Kimball, for some identification. William responded that he did not have any. Veil thought the two men in the Pontiac were in a nervous and fidgety state.

Still convinced from the appearance of things that something felonious was going on, Trooper Viel consecutively ordered William Kimball and John Kimball out of the car, pat frisked them, and ordered them to step over the highway guardrail at a distance of about fifteen feet ahead of their automobile. The pat frisks had not turned up weapons or anything else out of the ordinary, although the officer noticed white powder on William's work boots. He thought the powder "possibly could have been a controlled substance." Trooper Viel asked John Kimball if there were any drugs in the car. Kimball said he did not know; it was not his car.

1. *The stop.* In the absence of a traffic violation or visible unlawful vehicular defect,[1] we do not think that a broken window and missing trunk lock on a generally old dilapidated car add up to a basis for a threshold stop. The circumstances are unlike those in *Commonwealth* v. *Valentine,* 18 Mass. App. Ct. 965, 966 (1984), in which the car lacked rear lights and had a "popped-out" trunk lock. There the vehicular defect in and of itself constituted a violation of law and justified a stop. The "popped-out" lock was a stimulus for additional investigation of a car that was going to be stopped in any event. Here, there was of course no visible violation of law and, it is worth noting, Trooper Viel did not speak of a "popped-out" lock but of a hole where the trunk lock would have been, a condition consistent with the generally deteriorated character of the automobile. A third ground for Viel's suspicion was that the occupants of the Pontiac looked straight ahead rather than making eye contact. Surely minding one's business does not display consciousness of guilt, and one easily imagines that had the Kimball brothers looked at

---

[1] Although Trooper Viel later issued a citation for failure to display a front license plate, the motion judge found that there was a front plate and, consequently, that there was no violation for failure to display a plate.

the trooper and then away, they would have been thought to have acted furtively. As to the fleeting disappearance from view of William Kimball, that occurred before the trooper had signalled any intention to stop the car. None of the grounds articulated for the stop makes the grade as specific facts warranting a car stop and inquiry. Contrast *Commonwealth* v. *Cavanaugh*, 366 Mass. 277, 278 (1974) (car stopped after going wrong way down a one-way street and then leading police on a chase); *Commonwealth* v. *Wren*, 391 Mass. 705, 707-708 (1984)(van had stopped inexplicably at night by a vacant lot in a residential neighborhood and, then, moved very slowly until a police cruiser approached it, whereupon it sped up); *Commonwealth* v. *Owens*, 414 Mass. 595, 597 (1993) (owner of the car stopped was wanted on an outstanding warrant for his arrest on serious felony charges and officer could reasonably suppose the car was being driven by its owner). A hunch, as we said at the beginning of this opinion, is an insufficient basis for a threshold inquiry. *Commonwealth* v. *Silva*, 366 Mass. 402, 406 (1974). *Commonwealth* v. *Wren, supra* at 707.

2. *The search after the stop.* Supposing justification for a stop on suspicion that the Pontiac was stolen, Trooper Viel could make a threshold inquiry and take reasonable precautions for his protection. *Commonwealth* v. *Ferrara*, 376 Mass. 502, 505 (1978). See also *Commonwealth* v. *Owens*, 414 Mass. at 600. The routine generally begins with a request for license and registration. Here, those were delivered and appeared to be in order. The name on the registration was the same family name (Kimball) as that of the properly licensed driver. It stretches coincidence that a thief would be so lucky as to find in the car he stole a registration bearing the same surname as his. When persons stopped produce a valid license and registration, there is no basis for further interrogation. *Commonwealth* v. *Ferrara*, 376 Mass. at 505. As in the *Ferrara* case, "no reason appears why they should not have been permitted to continue on their way." *Ibid.*

Let us suppose further, for purposes of discussion, the highly dubious proposition that the inability of Willam Kim-

ball to produce personal identification to confirm the motor vehicle registration that *had* been produced justified Trooper Viel in pursuing his stolen car theory. The officer could then, for his protection, order the occupants out of the car and pat frisk them. *Commonwealth* v. *Owens*, 414 Mass. at 600, and cases there cited. Trooper Viel did so, and his search produced no weapons or anything else unlawful. It will be recalled that the officer then ordered the Kimball brothers to stand fifteen feet away and over a barrier. At that point the officer could have made a radio stolen car check. Instead, Trooper Viel chose to radio for backup. Even if one ascribes the call for support to sensible prudence, it is more difficult to explain why, while another police cruiser was on its way, Trooper Viel proceeded to rummage through the Kimball automobile in which he did, indeed, ultimately find contraband drugs in a jacket.[2] There was no lawful basis for that search. Trooper Viel had secured his safety and was simply continuing to play his hunch. Contrast *Commonwealth* v. *Little*, 16 Mass. App. Ct. 959, 960 (1983), in which the police had probable cause to believe there was a weapon concealed in the automobile in question. The drugs seized were the product of an unlawful search and, as evidence, should have been suppressed.

Police do challenging and dangerous work. See the celebrated observation of Harlan, J., concurring in *Terry* v. *Ohio*, 392 U.S. 1, 33 (1968), that in threshold police inquiries, "the answer might be a bullet." The police and the public may wonder why the end product of a hunch, sharpened by experience, should be undone by what the media like to call "a technicality." One of the factors that most differentiates a free society based on law from an authoritarian society is that police may not act on mere suspicion or by random dragnet. As a people we have been instructed by colonial experience, refreshed by repeated experience elsewhere in the world, that in the absence of standards — "technicalities" — there is soon no protection from arbitrary invasion of home,

---

[2]He thought he had also found a baggie of drugs in the glove compartment of the Pontiac, but that material tested as sodium bicarbonate.

automobile, or other places where men and women are entitled to think themselves safe. Disregard those standards, and law enforcement officers will be as vulnerable as the ordinary citizen to the knock in the night. See *Commonwealth* v. *Garcia*, 34 Mass. App. Ct. 645, 651 n.8 (1993).

The order denying the defendant's motion to suppress is reversed. The judgment is reversed and the verdict set aside.

*So ordered.*