COMMONWEALTH *vs.* RUBEN DARIO TORRES.

No. 93-P-1667.

Middlesex. September 15, 1995. - January 30, 1996.

Present: PORADA, IRELAND, & GREENBERG, JJ.

Further appellate review granted, 422 Mass. 1106 (1996).

*Search and Seizure,* Threshold police inquiry, Fruits of illegal arrest.
   *Constitutional Law,* Search and seizure. *Practice, Criminal,* Motion to
   · suppress.

The record of a hearing on a motion to suppress evidence demonstrated
   that, after a State trooper stopped a motor vehicle for speeding and
   removed the passenger for safety concerns, and after the driver produced
   a valid license and registration, the trooper had no basis for any further
   detention or inquiry: evidence subsequently seized in a warrantless
   search based on the driver's consent should have been suppressed as
   fruit of the poisonous tree. [8-14]

INDICTMENT found and returned in the Superior Court
Department on February 27, 1992.

A pretrial motion to suppress evidence was heard by *Margot Botsford*, J., and the case was heard by *Howard J. Whitehead*, J.

*John C. McBride* for the defendant.

*William F. Bloomer*, Assistant District Attorney, for the
Commonwealth.

GREENBERG, J. While searching the inside of an automobile
after a routine traffic stop, State Trooper Peter Cummings
found twenty baggies of cocaine which, on analysis, weighed
130.06 grams and was 81 per cent pure. A passenger, the defendant Ruben Dario Torres, was convicted by a jury of trafficking in more than one hundred grams of cocaine (G. L. c.
94C, § 32E[*b*][*3*]).[1] The principal issue presented is whether
the trooper conducted an illegal search when he dipped into a

[1]The defendant was also indicted for conspiracy to traffic in cocaine
(G. L. c. 94C, § 40), which was placed on file with his consent.

plastic shopping bag in the automobile passenger area compartment. The defendant also claims that the evidence presented at trial was insufficient to establish his possession and control of the drugs found inside the motor vehicle, citing *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 409 (1989). We need not reach that issue because we conclude that the motion to suppress should have been allowed, and we reverse the conviction.

These are the facts found by the judge of the Superior Court who heard and denied a motion to suppress the incriminating evidence.[2] While on routine patrol on Route 3 in Bedford at about 10:15 A.M., Trooper Cummings clocked the car in question as moving over 70 miles per hour and signalled the driver to pull over. In response, the two-door Renault came to a stop in the breakdown lane of the highway. The trooper, who was in uniform and armed with a 9 millimeter Sig Sauer handgun, approached the Renault from the passenger side. Looking through the passenger's side window, he saw the defendant conversing with the driver with his back toward the trooper. About twenty seconds elapsed and the trooper knocked on the window. In response, the defendant opened the door and started to get out. His suspicions aroused by the delayed response, and the defendant's attempt to get out of the car, the trooper ushered the defendant to the rear of the car to separate him from the driver.

Trooper Cummings then returned to the passenger side of the car and asked the driver for his license and registration. The driver looked for the registration, opening and closing the glove compartment quickly. He produced the necessary papers. To the trooper, the driver seemed nervous. In response to questions, he stated that his passenger's name was Ruben Torres, that he (the driver) was coming from the Burlington Mall where he was shopping for a radio, and that he was born in Medellin, Colombia. Glancing at the driver's license, the trooper noticed that it bore an address in Lowell known to him as a neighborhood associated with drug activity. From his training and experience, the trooper testified that he was aware that Medellin "is a principal source of cocaine distributed to the United States."

---

[2]The judge's findings of fact upon the motion to suppress are here supplemented by uncontested details. See *Commonwealth* v. *Oreto*, 20 Mass. App. Ct. 581, 582 (1985).

Once the trooper determined that the driver's Massachusetts operator's license and motor vehicle registration were valid and had not expired, he returned to the defendant who remained, as directed, at the rear of the vehicle. After engaging the defendant in a series of questions regarding his recent whereabouts, the trooper asked the defendant for identification. Next, as the motion judge found, the trooper illegally searched the defendant's wallet and seized what he believed to be notes of drug transactions, directions from Lowell to New York City, and a money wire receipt from Lowell to Medellín, Colombia.

Near the end of his conversation with the defendant and after seizing his wallet, the trooper, who could still see the driver through the rear window of the car, noticed the driver move his right hand near his jacket pocket. Again, the trooper approached the driver, who remained inside the car. The trooper then patted the side of the driver's jacket, felt a hard object, and recovered a telephone pager. After a brief discussion, the trooper twice asked the driver whether there were drugs in the car. The driver responded "No, there's no drugs. Search."

The trooper discovered a plastic shopping bag hidden behind a hinged panel attached to the rear passenger side. The plastic bag contained a number of small baggies with a white powder in them. Believing the powder to be cocaine, he placed both the defendant and the driver under arrest, and both were informed of their Miranda rights. Later testing established that the white powder was cocaine.

In reviewing the denial of a motion to suppress, we accede to the motion judge's subsidiary findings of fact absent clear error. *Commonwealth* v. *Yesilciman*, 406 Mass 736, 743 (1990). *Commonwealth* v. *Frazier*, 410 Mass. 235, 239 (1991). *Commonwealth* v. *Harmon*, 410 Mass. 425, 428, 430-431 (1991). However, we make an "independent determination on the correctness of the judge's application of constitutional principles to the facts as found." *Commonwealth* v. *Robbins*, 407 Mass. 147, 151 (1990) (internal citations and quotations omitted). On appeal, the defendant argues that there was insufficient information to justify a threshold inquiry beyond the scope of a routine traffic stop.

We start with the proposition that when an operator of an automobile is stopped for a traffic offense and there are no

grounds for inferring that either the operator or his passengers were involved in the commission of a crime, see *Commonwealth* v. *Crowley*, 29 Mass. App. Ct. 1, 3 (1990), or engaged in other suspicious conduct, see *Commonwealth* v. *Bacon*, 381 Mass. 642, 644 (1980), police inquiry must come to an end upon the production of a valid license and registration. See *Commonwealth* v. *King*, 389 Mass. 233, 243-244 (1983).

That type of inquiry is carefully circumscribed by law because the police must follow a standard or routine procedure absent suspicious conduct of the motorist. *Commonwealth* v. *King*, 389 Mass. at 244. Any further intrusion on the rights of the occupants of the vehicle must be based on the need of the officer to take reasonable precautions for his own protection. *Commonwealth* v. *Ferrara*, 376 Mass. 502, 505 (1978).

In the present case, the record supports the judge's findings that the trooper properly stopped the vehicle for speeding and was entitled to engage in a threshold inquiry as to the driver's license and registration. See *Commonwealth* v. *Bacon*, 381 Mass. at 644 (police warranted in stopping a vehicle upon observing a traffic violation). Accord *Commonwealth* v. *Figueroa*, 18 Mass. App. Ct. 967, 967 (1984); *Commonwealth* v. *Rivera*, 33 Mass. App. Ct. 311, 314 (1992) (officer has right to stop car he has observed speeding); *Commonwealth* v. *Lantigua*, 38 Mass. App. Ct. 526, 527 (1995) (traffic violation justified threshold inquiry for license and registration). The defendant's unexpected attempt to get out of the vehicle, coupled with his delay in acknowledging the trooper, justified the trooper's initial concern and removal of the defendant to the rear of the vehicle for safety reasons. See *Commonwealth* v. *Silva*, 366 Mass. 402, 406-407 (1974).[3]

Still, once any potential threat to the officer's safety was dispelled and there was no reasonable suspicion that criminal activity was afoot, any basis for further detention evaporated.

---

[3]A frisk pursuant to *Terry* v. *Ohio*, 392 U.S. 1 (1968), for weapons on the defendant's person would have been permissible at this point. See *Commonwealth* v. *Santiago*, 30 Mass. App. Ct. 207, 210 (1991) (where driver and passenger abruptly jumped from vehicle, limited search for weapons on person permissible). Accord *Commonwealth* v. *Kimball*, 37 Mass. App. Ct. 604, 607 (1994) (trooper may take reasonable precautions for his protection).

See *Commonwealth* v. *Ferrara*, 376 Mass. at 504-505 (no basis to interrogate passenger after driver produced valid license and registration); *Commonwealth* v. *Loughlin*, 385 Mass. 60, 61-62 & n.3 (1982) (search conducted after justifiable threshold inquiry wherein driver produced valid license and registration held impermissible); *Commonwealth* v. *King*, 389 Mass. at 244 (once officer verified driver's and passenger's licenses and vehicle registration, no grounds existed for further investigation or precautions); *Commonwealth* v. *Figueroa*, 18 Mass. App. Ct. at 967-968 (defendant, who was properly stopped for speeding, and who produced valid license and registration, should have been free to continue on his way; officer's subsequent warrantless search held illegal where evidence did not demonstrate that trooper had reasonable belief that defendant was armed and dangerous); *Commonwealth* v. *Kimball*, 37 Mass. App. Ct. 604, 607 (1994) (once driver produced valid license and registration, he should have been permitted to leave). Contrast *Commonwealth* v. *Vanderlinde*, 27 Mass. App. Ct. 1103, 1104 (1989) (where officers chased vehicle before it stopped, and then saw passenger reach into the well between the car seats, court held that this was not a routine traffic stop which normally terminates with presentation of a valid license and registration); *Commonwealth* v. *Rivera*, 33 Mass. App. Ct. at 314 (trooper may investigate passengers upon driver's failure to produce valid license).

While the motion judge correctly ruled that the seizure of the defendant's wallet went beyond the permissible scope of the inquiry (a point the government apparently concedes), she ultimately denied the suppression motion on the ground that the items found in his wallet were admissible under the inevitable discovery doctrine. See *Commonwealth* v. *O'Connor*, 406 Mass. 112, 117-118 (1989). To validate that conclusion, we must assume that the trooper was legitimately present at the rear of the vehicle when he observed the driver's furtive right hand movement.[4] The record, however, does not encourage that assumption. Rather it suggests that the trooper

---

[4]The cases relied upon by the motion judge in concluding that the officer could permissibly seek the defendant's identification and thus was legitimately present at the rear of the vehicle when he observed the driver's furtive movement are inapposite. See *United States* v. *Basey*, 816 F.2d 980, 990 (5th Cir. 1987) (police may request motorist's identification where the stop is founded upon reasonable suspicion of criminal activity); *Harper* v. *State*, 532 So. 2d 1091, 1094 (Fla. 1988) (*Terry* stop and request for

continued to interrogate the defendant *after* the driver had produced a valid license and registration. It appears that the trooper had no purpose other than to conduct an illegal interrogation or to make an illegal search. The trooper's further detention of the defendant was permissible only upon "reasonable suspicion, based on specific, articulable facts and reasonable inferences, that the defendant had committed, was committing, or was about to commit a crime." *Commonwealth* v. *Silva*, 366 Mass. at 405. *Commonwealth* v. *Willis*, 415 Mass. 814, 817 (1993). Accord *Adams* v. *Williams*, 407 U.S. 143, 144-146 (1972) (brief stop of defendant who was reported as carrying narcotics and a concealed weapon and sitting alone in a high crime area in the early morning hours held permissible to determine defendant's identity); *Brown* v. *Texas*, 443 U.S. 47, 51 (1979) (officer may detain suspect for brief questioning where he has reasonable suspicion to believe that individual is involved in criminal activity); *United States* v. *Hensley*, 469 U.S. 221, 229 (1985) (*Terry* stop permissible to investigate the suspicion that the defendant was wanted in connection with a completed felony because it was based on specific, articulable facts). "The question is whether a reasonable person in the trooper's position would be justified by some objective manifestation to suspect that the defendant was, or was about to be, engaged in criminal activity or would be warranted in the belief that his safety or the safety of others was endangered." *Commonwealth* v. *King*, 389 Mass. at 243.

---

identification permissible where defendant was found in a drug house within feet of cocaine, a torch which was a potential weapon, and an item of narcotics paraphernalia); *State* v. *Landry*, 588 So. 2d 345, 348 (La. 1991) (vehicle stopped for speeding and both occupants ordered out of the car and asked for identification at the same time was permissible where right to ask passenger for identity hinged on officers' security interest in determining whether they were dealing with dangerous characters in light of the "lonesome confrontation in the dark early morning hours"); *State* v. *Wilcox*, 435 A.2d 569, 570-571 (N.J. 1981) (upholding stop and request for identification where defendant, observed in company of one for whom police had an arrest warrant, had lingered about, watching police arrest companion and find drugs, and gave what police knew to be a phony identification); *State* v. *Flynn*, 285 N.W.2d 710, 713 (Wis. 1979) (*Terry* stop of defendant permissible where he was found in the immediate vicinity of a burglary reported a half-hour earlier and in the company of one fitting description of burglar). In all these cases, the officers had reasonable suspicion to believe the defendant had committed, was committing, or was about to commit a crime. See *Commonwealth* v. *Silva*, 366 Mass. at 405.

After the stop of the vehicle, the government argues that a combination of circumstances arose which justified the questioning of the defendant. The grounds argued to the motion judge in support of that contention were that: the defendant was a passenger in a vehicle stopped for exceeding the speed limit; there was a twenty to twenty-five second delay in the defendant acknowledging the trooper during which the driver had looked at the trooper; the defendant unexpectedly tried to get out of the vehicle; the driver resided in an area known to the trooper for high drug activity; the driver was born in Medellin, Colombia — a principal source for cocaine distribution; and the driver acted nervously and had given what the trooper considered an implausible explanation about where he was coming from (the mall from where the driver claimed he was coming had opened thirty-five minutes earlier).

None of these factors rises to a level justifying a reasonable suspicion that the defendant was committing or was about to commit a crime. Collectively, these events were no more indicia of criminal activity than those found in *Commonwealth* v. *Ellis*, 12 Mass. App. Ct. 476, 477 (1981), where an officer saw three people conversing through a car window in a parking lot and money exchanged for something in the car. Compare *Commonwealth* v. *Patti*, 31 Mass. App. Ct. 440, 441-442 (1991) (upholding *Terry* stop but noting that initiation of inquiry approached the "outer limits" of the *Terry* privilege where defendant was observed at 3:15 A.M. in a hotel parking lot next to a running car with its hood up, in an area which had experienced a large number of car thefts, and where defendant had his hands in his pockets).

In the circumstances of this case, we conclude that no reason appears why the defendant and the driver should not have been permitted to continue on their way. Compare *Commonwealth* v. *Crowley*, 29 Mass. App. Ct. 1, 4 (1990) (police had reasonable and articulable suspicion to detain defendant whom they had seen running near the scene of crime and who gave them inconsistent statements during threshold inquiry); *Commonwealth* v. *Lantigua*, 38 Mass. App. Ct. at 528 (failure to produce license, an offense in itself, reasonably

gave rise to suspicion of other offenses).[5] In a routine traffic stop, "[c]ertainly the passenger has a higher expectation of privacy than the driver, because the passenger plays no part in the routine traffic infraction and has reason to suppose that any exchange with the authorities will be conducted by the driver alone." *State* v. *Landry*, 588 So. 2d at 349 (Dennis, J., dissenting), quoting from *State* v. *Williams*, 366 So. 2d 1369 (La. 1978).

The chain of logic has to be as follows: had the trooper not been present at the rear of the vehicle, he would not have observed the driver's furtive movement. Without that observation, he would have had no occasion to obtain the driver's consent to search the vehicle. And without his consent, the trooper would not have discovered the cocaine which led to the defendant's arrest. All the evidence in issue is traceable to the exploitation of the primary illegality — the unlawful detention of the defendant at the scene — so that it must be suppressed as fruit of the poisonous tree. See *Commonwealth* v. *McCleery*, 345 Mass. 151, 153 (1962); *Commonwealth* v. *Conway*, 2 Mass. App. Ct. 547, 553 (1974). Neither the so-called "furtive" movement nor the consent to search created a completely new situation so attenuated from the initial illegality as to dissipate its taint. Compare *Commonwealth* v. *Holmes*, 34 Mass. App. Ct. 916, 917-918 (1993). Therefore, the discovery by lawful means of the cocaine inside the car and the items in the defendant's wallet were not "certain as a

---

[5]As in *Commonwealth* v. *Loughlin*, 385 Mass. 60 (1982), the distinction here is in the order of events. In response to the officer's request, the passenger in *Loughlin* identified himself but did not produce any identification. *Id.* at 62. In holding a subsequent search of the vehicle illegal, the court stated:

> "[O]nce [the driver] had produced a valid license and registration and [the passenger] had identified himself, any justifiable investigation was complete. '[T]here was no basis for further interrogation and no need for further protective precautions . . . [a]nd no reason appears why they should not have been permitted to continue on their way.' "

*Id.*, quoting from *Commonwealth* v. *Ferrara*, 376 Mass. at 505. In the present case, had the trooper requested identification from the defendant before he verified the driver's license and registration, it would have been a permissible threshold inquiry. *Commonwealth* v. *Loughlin*, 385 Mass. at 62-63 n.3. *Commonwealth* v. *Santana*, 420 Mass. 205, 213 n.8 (1995).

practical matter." *Commonwealth* v. *O'Connor*, 406 Mass. at 117.

The order denying the motion to suppress is reversed. A new order is to enter allowing the motion to suppress. The judgment is reversed, and the verdict is set aside.

*So ordered.*