Toomey, J.
INTRODUCTION
Defendant was accused by the Worcester County-Grand Juiy ofTrafficking in Cocaine (100-200 grams) and Conspiracy to Traffick in Cocaine. He has offered a motion to suppress the fruits of a warrantless search and seizure which occurred after the vehicle in which he was a passenger was stopped by the Massachusetts *589 State Police on Route 84 in Sturbridge. Those fruits comprise the underpinnings of his indictments.
An evidentiary hearing upon the motion was conducted and the testimonial and documentary submissions received at that hearing have prompted the following findings of fact.
FINDINGS OF FACT
1. On June 12, 1991, SGT Sean Baxter was assigned to traffic patrol duties, which included opportunistic drug interdiction actions, along Route 84 in the vicinity of Sturbridge. He was positioned on the eastbound side of Route 84 when, at about 9:15 p.m., he observed a Mercury automobile proceeding at a rate of speed in excess of the posted limit and in an erratic manner.[1] SGT Baxter triggered his signal lights and followed the Mercury for a short distance until it stopped on the right shoulder of Route 84 between the Route 20 and Massachusetts Turnpike exits.
2. While following the Mercury, SGT Baxter saw the front passenger (defendant, hereinafter “Pedro”) moving about and the rear passenger (Pedro’s brother, hereinafter, “Jose”) turning to look at the pursuing cruiser and leaning forward toward the front seat.
3. SGT Baxter approached the Mercury on foot and conversed with the operator. In response to the officer’s request, the operator produced a license and registration which, because they bore different names, piqued SGT Baxter’s attention. He learned that the operator was a taxi driver[2] and had been engaged by his two passengers to transport them to Boston in exchange for three hundred dollars.
4. During his inquiry of the operator, SGT Baxter noted that the two passengers continued to “move about” in the Mercury. The SGT was particularly attentive to the rear passenger, Jose, who was “fidgety,” “rubbing his hands” and repeatedly inserting a hand under his bib overalls. SGT Baxter walked to the right rear door of the Mercury, inquired of Jose and learned from him his name, his intended itinerary (from La Guardia airport, New York, to Jamaica Plain) and his purpose (to visit his grandmother). Jose also told SGT Baxter that the front passenger was his cousin. Moving to the right front door, SGT Baxter spoke with Pedro who, after he verbally identified himself, informed the SGT that Jose was his brother and that the two were going to Jamaica Plain for the grandmother’s funeral. SGT Baxter observed that Pedro was “nervous,” rubbed his hands along his legs and held his hands at his waist.
5. The circumstances caused SGT Baxter to feel concern for his safely. He retreated to his cruiser and called for back-up. When the Trooper arrived, SGT Baxter returned to the Mercury, directed the operator to exit the vehicle and asked him whether he would permit the vehicle to be searched. The operator acquiesced and signed a “consent form” to that effect. SGT Baxter did not inform him of the purpose of the search.
6. SGT Baxter also ordered the passengers to exit the vehicle. They complied and the Mercury was searched. The search produced nothing.
7. Turning his attention to the passengers, SGT Baxter advised them that he had noted inconsistencies in their earlier responses to him. He mentioned, in particular, their differing accounts with respect to the grandmother in Jamaica Plain. Pedro and Jose then argued with each other about the grandmother aspect of their respective statements to SGT Baxter. At this point Pedro, at least, was, in SGT Baxter’s view, free to leave. Baxter conceded that he had no reason to arrest Pedro. As a practical matter and in the circumstances, however, Pedro was detained by Baxter.
8. SGT Baxter pat-frisked Jose and felt a large object in Jose’s pocket and a hard object in the area of his groin. Baxter extracted the large object (one thousand dollars in bills) and the hard object (four packets of one thousand dollar bills flat wrapped in plastic). He also seized a pager from Jose’s person. A pat-frisk of Pedro produced nothing.
9. The State Police next summoned a canine unit and the dog signalled a link between the currency seized from Jose and the rear seat of the Mercury.
10. As the canine was performing its function, SGT Baxter observed Pedro, who was facing away from SGT Baxter, make a throwing motion to his right. The SGT said “What are you doing?” Pedro did not respond verbally, but did lower his pants to the ground.[3] As he approached Pedro, SGT Baxter observed three packets of a white powder substance on the ground three or four feet to Pedro’s right. Baxter seized the packets, and both Pedro and Jose were placed under arrest.
11. At the Sturbridge Barracks, SGT Baxter delivered certain advisements to Pedro[4] and interrogated him. Pedro’s responses were self-incriminating.[5] Although SGT Baxter did not employ an interpreter in delivering his warnings to Pedro or in conducting the interrogation, the weight of the evidence established that Pedro comprehended SGT Baxter’s words.
DISCUSSION
1. The Search and Seizure Issue
Pedro seeks to suppress the cocaine seized by the police at the scene of the automobile stop. Pedro acknowledges that the original traffic stop of the automobile in which he was a passenger and the threshold inquiry of the driver in connection with that violation were valid. He argues, however, that SGT Baxter’s subsequent actions in ordering the occupants out of the vehicle and conducting pat frisks of the passengers were improper and that, therefore, the court should suppress the packets of cocaine Pedro allegedly threw on the ground after the pat frisk of him had revealed no contraband.
When an officer stops a car for an apparent traffic violation and receives a valid license and registration, the police inquiry must end, unless the officer has *590 grounds for inferring that “either the operator or his passengers were involved in the commission of a crime ... or engaged in other suspicious conduct.” Commonwealth v. Torres, 424 Mass. 153, 159 (1997), quoting Commonwealth v. Torres, 40 Mass.App.Ct. 6 (1996). See also Terry v. Ohio, 392 U.S. 1,21 (1968).
Because SGT Baxter’s initial stop of the car for speeding and his threshold inquiry of the driver were valid, the question for this court is whether his subsequent pat frisks of the defendants were contrary to law. Defendant maintains that the police conduct subsequent to the presentation of the license and registration was not properly grounded and requires suppression of the cocaine, allegedly discarded by Pedro, as the fruits of an illegal search. The Commonwealth contends to the contrary.
A) The Exit Order and the Threshold Inquiry
SGT Baxter had reasonable grounds for making threshold inquiries of the passengers after he had ascertained that the driver’s license and registration were valid. He had observed several “articulable facts” suggesting that the occupants of the car were engaged in suspicious conduct within the Torres doctrine. While he was following the speeding car, SGT Baxter noticed Jose, in the rear seat, repeatedly turn to look at the pursuing cruiser, then lean forward toward the front seat. The driver’s license and registration, though valid, bore different names. The uncommon circumstance of two men hiring a cab for a trip from Boston to New York contributed to the curious drama playing out on Route 84. And, finally, while questioning the driver, SGT Baxter noticed that both passengers appeared nervous and that Jose was “fidgety,” repeatedly inserting a hand under the unsnapped bib of his overalls. Those pre-exit order observations by SGT Baxter surely permitted him to infer that “suspicious conduct” was afoot. Torres, supra, at 159.
An “alert police officer may add up suggestive factors, each of which is insufficient alone to support a search or arrest.” Commonwealth v. Bartlett, 41 Mass.App.Ct. 468, 472 (1996), quoted by Torres, supra, at 161. An experienced investigator may consider the “whole ‘silent movie’ (of) ... a sequence of activity . . .’’in determining whether suspicious conduct exists. Commonwealth v. Santaliz, 413 Mass. 238, 241 (1992). SGT Baxter had observed furtive movements in the back seat of the car before the stop, the furtive gestures continued as he questioned the driver, and the circumstances of the trip seemed unusual. Those circumstances provided reasonable grounds for SGT Baxter to issue an exit order for the purpose of conducting a threshold inquiiy of the occupants of the car. The threshold inquiiy that ensued at bar, post-exit order, was, therefore, constitutionally compliant. See Commonwealth v. Crowley, 29 Mass.App.Ct. 1, 4 (1990).[6]
B) The Detention
Those inquiries resulted in strikingly divergent stories from the two passengers. Jose told SGT Baxter that he was Pedro’s cousin; Pedro, however, said he and Jose were brothers. Jose said that they were going to Boston to visit their grandmother; Pedro, however, said that they were going to Boston to attend their grandmother’s funeral. When he heard the conflicting stories, SGT Baxter was justified in detaining the passengers and in calling for back-up. His continued detention of Pedro and Jose during the consensual search of the Mercury was justified by the passengers’ furtive movements and by their conflicting responses to his threshold inquiries. See Commonwealth v. Crowley, 29 Mass.App.Ct. 1, 4 (1990) (police had reasonable and articulable suspicion to detain defendant whom they had seen running near the scene of crime and who gave them inconsistent statements during threshold inquiiy). The minimal restriction upon Pedro’s and Jose’s freedom was wholly in proportion to the legitimate concerns of SGT Baxter and the valid purposes of his further inquiiy.
c) The Seizure of the Cocaine
When the search of the car produced no contraband, SGT Baxter, harboring continuing concern for his safety, pat-frisked Jose and Pedro. The pat-frisk of Pedro was wholly unproductive. Nothing of evidential value was discovered. Pedro argues, however, that, because the pat frisk was not justified, the cocaine he threw on the ground after the pat frisk had ended must be suppressed.
Concededly, in order to justify the pat frisk, the Commonwealth would have to prove that, at that time, Baxter reasonably believed that his safety or the safety of other persons was in danger. Commonwealth v. Williams, 46 Mass.App.Ct. 181 (1999). We need not, however, scour the record for such proof because there is no evidence that Pedro’s decision to throw the cocaine on the ground was occasioned by Baxter’s pat frisk. Pedro did not discard the packets of cocaine until his pat frisk had ended, with his cache undiscovered, and SGT Baxter had turned his attention to other matters. Accordingly, even if we assume, arguendo, that Baxter’s pat-frisk of Pedro was without the requisite Williams foundation, there is no suggestion, on this record, that the pat-frisk resulted in the discovery of the cocaine. Pedro’s act of discarding his treasure, irrational as it appears, is not sufficiently linked to the pat-frisk to permit this court to conclude that the former was the fruit of the latter.
In sum, when a defendant seeks to suppress evidence obtained after unlawful police conduct, the court must determine whether the challenged evidence has been obtained by “exploiting the illegality.” See Commonwealth v. Fredette, 396 Mass. 455, 458-59 (1985). Sufficient causal connection is not established by the fact that “but for” the illegal police activity, the evidence would not have been discovered. *591 Commonwealth v. Borges, 395 Mass. 788, 795 (1985), citing Commonwealth v. King, 389 Mass. 233, 245 (1983). At bar, where the cocaine was discovered as a result of unrelated action by Pedro after SGT Baxter had completed his pat frisk of Pedro, there is simply no evidence that Baxter’s conduct caused Pedro to decide to throw the packets of cocaine on the ground. Accordingly, there is no merit to Pedro’s motion to suppress the cocaine he discarded after the pat-frisk was completed.
2. The Miranda Issue
When Pedro arrived at the police station, he was subjected to custodial interrogation which produced incriminating statements. Although SGT Baxter did testify that he “Mirandized” Pedro before commencing the interrogation, the Commonwealth adduced no evidence of the specific warnings Baxter gave Pedro. We are left, therefore, with Baxter’s opinion that his delivery of the warnings satisfied the Miranda requirement. The court may not, however, cede to the officer who delivered the warnings the court’s duly to determine the adequacy of the Miranda cautions. On the record at bar, this court is unable to conclude that Pedro was correctly informed and adequately waived his Miranda rights. Consequently, any incriminating comments Pedro made to the police after his arrest must be suppressed.
CONCLUSION
The police action in stopping the car for speeding was justified. The circumstances surrounding the stop created sufficient suggestion of suspicious conduct to warrant SGT Baxter’s threshold inquiries of the passengers. The discrepancies in the responses by the passengers to those inquiries and the inception of the consent search justified SGT Baxter’s decision to order Pedro from the Mercury. Even if we assume that the pat-frisk of Pedro was not warranted by the circumstances, the record does not suggest that Pedro’s subsequent decision to discard the cocaine resulted in any way from exploitation by SGT Baxter of the illegal pat-frisk.
The evidence concerning Pedro’s receipt of his Miranda warnings is insufficient for the court to find a knowing, intelligent and voluntary waiver of his Miranda rights.
ORDER
For the foregoing reasons, it is hereby ORDERED that:
The motion of the defendant to suppress the cocaine found on the ground near him is DENIED.
The motion of the defendant to suppress any incriminating statements he made at the police station is ALLOWED.

The vehicle weaved from the middle lane to the left lane and back to the middle lane.

The Mercury bore livery plates.

The evidence provided no clue as to why Pedro elected such a curious form of response.

At the hearing SGT Baxter testified that he had recited the Miranda warnings to Pedro. There was, however, no evidence as to the contents of the warnings thus delivered.

Pedro admitted, inter alia, that he was paid to deliver cocaine to Boston and that he had discarded the cocaine seized by SGT Baxter.

An additional justification for the exit order was provided by the impending search of the vehicle. Having obtained valid consent from the operator, the search was lawful irrespective of whether or not probable cause supported Baxter’s conduct. Because the lawful search could not reasonably be effected with Pedro and Jose still in residence in the Mercury, their eviction was not constitutionally infirm.